(No. 19941.—
THE PEOPLE *ex rel.* The Chicago Bar Association, Relator,
*vs.* WILL N. JOHNSON, Respondent.

*Opinion filed April 23, 1931—Rehearing denied June 3, 1931.*

JOHN L. FOGLE, for relator.

WILLIAM H. HAYNES, for respondent.

Mr. CHIEF JUSTICE DUNN delivered the opinion of the court:

An information was filed, upon leave given, on the relation of the Chicago Bar Association against Will N. Johnson, charging him with unprofessional conduct and praying that a rule issue requiring him to show cause why his name should not be stricken from the roll of attorneys. The rule was issued, the respondent answered and the cause was referred to a commissioner, who took the evidence and reported his conclusions of fact and law.

The charge against the respondent was based upon his acts in connection with the conduct and management of a divorce suit in the superior court of Cook county as solicitor for the complainant, Joseph Henderson. The information alleged that about July, 1926, Henderson consulted the respondent about securing a divorce from his wife, Anna, and the respondent agreed to procure a divorce for him, and further agreed that Henderson should do certain carpenter work for him in full payment of the fees, court costs and expenses of procuring the divorce; that thereupon Henderson fully performed the carpenter work for the respondent in accordance with their agreement, and it became the duty of the respondent to bring the divorce proceeding for Henderson, defray the costs necessary to be expended, and procure a decree of divorce if the facts warranted the court in giving the relief. It was further alleged that Henderson

had just ground for the divorce from his wife, and if the cause had been properly presented would have been entitled to the entry of a decree; that the respondent thereafter filed in the superior court of Cook county a bill for divorce on behalf of Henderson against his wife but failed to further properly perform his services in the matter, and by various frauds committed upon the court after the filing of the bill so prejudiced the rights of Henderson that no decree has been entered, although the respondent had received, by way of services from Henderson, full payment for all costs, fees and expenses in said matter. It was alleged in the information that the respondent prepared and presented to the court a pretended affidavit of Henderson that he was unable to pay the costs and had not paid the costs or any attorney's fees in the matter, and also presented to the court his own affidavit to the effect that he, the respondent, had received no money or other consideration on account of services or court costs in the matter, and fraudulently induced the court to permit the bill to be filed and the cause prosecuted as if Henderson was a poor person and unable to pay the costs; that Henderson was not a poor person and was not unable to pay the costs, and these facts were well known to the respondent; that he fraudulently and falsely signed the name of Henderson to the pretended affidavit and falsely affixed thereto a jurat stating that Henderson had signed and sworn to the affidavit, to which jurat the respondent attached his signature as a notary public. The information further alleged that at the time of the filing of the bill the respondent also filed therewith and presented to the court an affidavit signed by him with the name of William N. Johnson, in which the respondent falsely stated to the court that he had received no money or other consideration on account of services in said cause or attorney's fees or court costs, and fraudulently failed to state in the affidavit or reveal to the court the fact that Henderson had previously rendered the respondent services as carpenter

in full payment of all costs and attorney's fees in the matter; that he attached to the pretended affidavit made by him a jurat stating that he had duly subscribed and sworn to the affidavit; that further to deceive the court he signed the jurat with the name "Will N. Johnson," under which name he held a commission as notary public, which name was written in a different handwriting in order to deceive the court into believing that he had executed the affidavit before another person as notary public, and by reason of these misrepresentations made by him the court was induced to permit the filing and prosecution of the divorce suit without payment of costs. At the time of the filing of the bill of complaint the information alleges that there was in force in the superior court a rule of court with reference to suits *in forma pauperis* which provided that in view of the large number of applications for leave to sue as a poor person and for the protection of the clerk's office against imposition, it is ordered that "hereafter all such applications must be accompanied by an affidavit stating that the plaintiff or complainant has a meritorious cause of action; also stating the applicant's occupation, means of subsistence, income during the year preceding the application, if any, and sources and amount of expected income, if any; that he or she is unable to pay the costs, and that he or she will not settle or compromise the claim or release the defendant until all accrued costs are paid. The attorney or solicitor for such person shall also make affidavit in writing that he has investigated the facts and that he believes the party has a meritorious cause of action, and further, that he will not accept any compensation from the plaintiff or complainant nor from any person until all costs are paid." It was further alleged that although the defendant, Anna Henderson, was a resident of Chicago and was known by the respondent to be a resident of Chicago, he upon the delivery of the summons to the sheriff instructed the sheriff to return it "not found;" that thereupon the respondent prepared a paper to be signed

by the defendant which falsely stated that she had filed an answer to the bill of complaint and that she waived service of process and consented to an immediate hearing in said cause; that the respondent secured her signature to that paper under representations unknown to the relator, but that such acts were prejudicial to her rights and contrary to the duty of the respondent as an attorney and solicitor under the canons of ethics of the legal profession; that the respondent procured or forged, or caused to be forged to said paper, the signature of B. B. White over the words, "Solicitor for defendant, Anna Henderson," and about May 1, 1929, the respondent caused the proceeding to be set for hearing before the Hon. Walter P. Steffen, one of the judges of the superior court, and upon the hearing before Judge Steffen fraudulently and falsely represented to the court that personal service had been procured on the defendant, and in support of such fraudulent and false representation presented to the court the paper upon which he had fraudulently secured the signature of Anna Henderson, and to which he, or someone under his direction, had forged the name of B. B. White as solicitor for Anna Henderson; that believing such representations the court heard the evidence in the cause and directed the same to be written up and a decree to be entered; that the evidence was written up and filed in the cause, and the respondent presented or caused to be presented to the court a decree containing false recitals that the court had jurisdiction of the parties in the matter, but before the decree was actually entered the foregoing facts came to light and the same remains on file in the cause though not entered as the decree of the court.

The respondent's answer admitted that he was licensed to practice law on or about October 8, 1919, and the existence of the rule alleged in the information. It denied that on or about July, 1926, Henderson consulted the respondent with reference to securing a divorce but stated that on or about September, 1925, he consulted the respondent but had

no money, and afterward, about October, 1925, and thereafter at intervals of a month to six weeks, he consulted respondent with reference to securing a divorce, but at all times stated that he had no money with which to begin suit, pay retainer fees or costs. The respondent denied that at any time he agreed to procure a divorce for Henderson or that he should do certain carpenter work for the respondent in full payment of the fees, court costs and expenses of procuring a divorce, but stated that about October, 1926, Henderson in a great state of excitement came to the respondent and informed him that his fiancèe was about to be arrested and prosecuted for disorderly conduct by reason of his failure to obtain a legal separation from his wife, and that thereupon Henderson agreed to do certain carpenter work in the suite of the respondent in consideration that respondent represent him as solicitor in a bill for divorce. He denied that Henderson shortly thereafter performed the carpenter work fully and completely and in accord with the agreement, but said that about October, 1926, he began the work by tearing out the plaster and lath from the inner wall and left the premises in a condition of disrepair and confusion for ten weeks and never did fully and completely perform his agreement. Further answering, he denied that Henderson had just grounds for divorce against his wife and that he would have been entitled to the entry of a decree if the cause had been properly presented and that the respondent failed to properly perform his services in the matter, and denied that he committed any fraud upon the court after the filing of the bill or at any other time or did anything whatsoever to prejudice the rights of Henderson. He denied that he received by way of services of Henderson full payment for all costs, fees and expenses, but stated the fact to be that he at no time agreed or offered to pay or advance filing fees or other similar costs in exchange for carpenter services. Further answering, he admitted that he prepared the purported affidavit but denied that he had re-

ceived full payment for all costs, fees and expenses or that he fraudulently induced the court to permit the bill to be filed; denied that he knew that Henderson was not a poor person and unable to pay the costs of court, but stated that during all the time Henderson was negotiating with the respondent, and for some time thereafter and for a long time prior thereto Henderson was a poor person; and denied that he falsely and fraudulently signed the name of Henderson to the purported affidavit or falsely and fraudulently affixed a jurat stating, in effect, that Henderson had signed and sworn to the affidavit and attached the signature of Will N. Johnson to the jurat. The respondent admitted that at the time of the filing of the bill of complaint he filed therewith and presented to the court an affidavit signed by him, but denied that he falsely and fraudulently stated to the court that he had received no money or other consideration on account of the services in the cause, either in costs or attorney's fees, or that he fraudulently failed to state in the affidavit or reveal that Henderson had theretofore rendered to him services as a carpenter in full payment of all costs and attorney's fees. Further answering, the respondent denied that to deceive the court he signed the jurat with the name "Will N. Johnson" or that the name was written in different handwriting in order to deceive the court into believing that he.had executed the affidavit before some other notary public or that he thereby induced the court to permit the filing of the affidavit without any payment of costs. He further denied that he prepared a paper falsely stating that the defendant waived service of process and consented that the cause be set down as of default for immediate hearing, or that he made or caused to be made any representations or performed any acts which in any way were prejudicial to the rights of Anna Henderson, or that he committed any acts contrary to his duty as a solicitor or attorney under the canons of ethics of the legal profession, and denied that he procured or caused to be procured, or forged or caused

to be forged to any paper, the signature of B. B. White over the words, "solicitor for defendant." The answer admitted that on or about May 1, 1929, he caused the proceedings to be set for hearing before Judge Steffen, but denied that he falsely represented to Judge Steffen that personal service had been procured on the defendant, and stated the fact to be that personal service was obtained upon the defendant by way of waiver of service of process. He denied the forgery of the name of Anna Henderson, or of B. B. White as solicitor for her, but stated that each of them at all times well understood the recitals set out in the papers they signed.

It is charged that the respondent agreed to procure a divorce for Henderson, and that Henderson agreed to do certain carpenter work for respondent in full payment of the fees, court costs and expenses of procuring the divorce; that Henderson fully performed the things by him agreed to be performed; that the respondent afterward filed a bill for divorce for Henderson but failed to further properly prosecute it, so that no decree of divorce was granted. Henderson and the respondent do not agree about the terms of the contract or its performance by Henderson, and it is not necessary to decide this question, because the case does not turn on it. Whatever may be thought of the question whether the respondent was negligent of his duty to his client, there can be no doubt about the other charges.

It is charged that the respondent prepared and presented to the court a pretended affidavit of Henderson for leave to prosecute his suit as a poor person, stating that he had no money with which to begin his suit, that he had a meritorious cause of action, and that he had paid his attorney no money, either costs or attorney's fees. It was further alleged that the respondent also prepared and presented to the court a pretended affidavit of himself that he was solicitor in the cause and had investigated the complainant's cause of action and found it a good one; that he had received no money from the complainant, either as costs or

retainer, and that if allowed to sue' as a poor person he would see to it that the first money received in the case should be applied to the payment of costs. The rule of the superior court in regard to applications for leave to sue as a poor person was set out in the information, was introduced in evidence before the commissioner and its existence was admitted by the respondent in his answer. The two supposed affidavits were introduced in evidence. Henderson testified that the name "Joseph Henderson" signed to the affidavit purporting to be his was not his handwriting, that he never signed or swore to the affidavit purporting to be his, and that the respondent never presented such a paper to him to be signed. He also testified that he was earning $25 a week at the time and was able to pay the costs, though the respondent testified that Henderson at all times claimed to have no money. Jay F. Wood, an expert in the examination of disputed documents, from a comparison of the admitted signature of Henderson to a stipulation filed in the case with the disputed signature to the affidavit, testified that in his judgment the two signatures were not written by the same person. Another expert, on the contrary, concluded that the two signatures were written by the same person. The respondent testified that Henderson signed the affidavit in his presence. He was called before Judge Steffen after the decree had been withheld because the costs were not paid, was informed that Henderson denied signing the affidavit and was asked for an explanation. Judge Steffen testified that the respondent then told him that it was a fact his client had not signed the affidavit; that the respondent had signed it himself, but that he signed it, with Henderson's approval, because he could not get in touch with Henderson. He gave the explanation that all others were doing that. Judge Steffen signed the decree, but it was not entered because subsequently a lawyer representing the defendant came in, stating that they wanted to defend and that there had been no service. Therefore

the decree was not entered and the case went on its regular course to some other judge.

In regard to the respondent's own pretended affidavit, it appears on its face to be subscribed by "William N. Johnson, solicitor." A jurat certifying that it was subscribed and sworn to is appended to it, signed, "Will N. Johnson, notary public," with his notarial seal impressed. The affidavit was typewritten, except the two signatures, and the respondent testified that he wrote both the name signed to the affidavit and that signed to the jurat. They are written in a different handwriting and the Christian name signed to the affidavit is written out in full, "William," while as signed to the jurat it is abbreviated to "Will." The respondent testified that the affidavit was sworn to by him before himself; that William N. Johnson the lawyer and Will N. Johnson the notary public were the same person, and that a person looking at it quickly probably would not know from the writing that William N. Johnson the solicitor was the same person as Will N. Johnson the notary public.

Upon consideration of all the evidence in regard to these two affidavits we are in accord with the finding of the commissioner that the great preponderance of the evidence shows that the name "Joseph Henderson" subscribed to the affidavit purporting to be made by him was not written by him but is in the handwriting of the respondent, and that, although all the handwriting on the purported affidavit of the respondent is his handwriting, there is such a difference in the handwriting of the two signatures as, in connection with the difference in the Christian names as written, would deceive an observer, not having any reason to suspect deception, to believe that they were written by two different persons. · The childish pretense of the respondent that he swore to the affidavit before himself, that he merely acknowledged his own signature to the affidavit and certified that it was subscribed and sworn to before him, and that he believed that practice to be regular and

proper, is additional evidence of his want of sincerity and his intention to deceive. He is forty-two years old. He was born and grew to manhood in Nebraska, was graduated from the University of Nebraska, admitted to the bar and practiced law there. He enlisted in the army, was commissioned as a lieutenant and served in France during the World War more than a year, faithfully performing his duties, and was honorably discharged at the close of the war. He was afterward admitted to the bar of this State and had been practicing his profession in Chicago nearly ten years when the events in question in this case occurred. We can come to no other conclusion than that he deliberately made the motion for leave to prosecute the suit as a poor person and presented to the court the pretended affidavit of the complainant which he had himself manufactured without the complainant's knowledge, and the pretended affidavit of himself, which he had not sworn to but which he had certified to in such a way that it appeared to have been sworn to before another person as notary public, all with knowledge and in violation of the rule of the superior court and with the intention to deceive the court and by the deception to procure leave to prosecute as a poor person. By his deceit he imposed on the court and procured the order to be granted.

The commissioner further found that the decree of divorce which was presented to Judge Steffen and was signed by him but was never entered because of the discovery of the respondent's acts in the conduct of the case, recited, "personal service of summons at least ten days before the return term of said cause, and default, according to the statute in such case made and provided," and that the respondent knew that these recitals which he stated in the decree presented to the court were untrue. In fact, by his direction the sheriff returned the summons "not found."

There were other charges in the information in regard to the respondent's acts in the conduct of this case, but it

would lengthen this opinion unduly to set them out or discuss them. The imposition upon the court by means of these two pretended affidavits, by which the court was deceitfully induced to enter an order in plain opposition to a rule of the court which the respondent not only was presumed to know but of which he admits he had actual knowledge; the unauthorized signing of his client's name to the affidavit without his client's knowledge, which he could not be authorized to do even by the direction of his client; the false certificate that his client had sworn to the affidavit; the palming off on the court of his own pretended affidavit, which was not, in fact, sworn to, and the false certificate that it was sworn to, all constitute gross malfeasance of the respondent in the discharge of the duties of his office as an attorney and counselor at law. One of those duties is, that the conduct of the lawyer before the court and with other lawyers should be characterized by candor and fairness. It is unprofessional and dishonorable to deal other than candidly with the facts in taking the statements of witnesses, in drawing affidavits and other documents and in the presentation of causes. These and all kindred practices are unprofessional and unworthy of an officer of the law, charged, as is the lawyer, with the duty of aiding in the administration of justice.

"The lawyer's duty is of a double character. He owes to his client the duty of fidelity, but he also owes the duty of good faith and honorable dealing to the judicial tribunals before whom he practices his profession. He is an officer of the court—a minister in the temple of justice. His high vocation is to correctly inform the court upon the law and the facts of the case and to aid it in doing justice and arriving at correct conclusions. He violates his oath of office when he resorts to deception or permits his clients to do so." (*People* v. *Beattie,* 137 Ill. 553.) "Unprofessional conduct on the part of an attorney involves a breach of the duty which professional ethics enjoin, and such a breach of

duty may consist 'in attempting by any means to practice a fraud, impose upon or deceive the court.' (*Ex parte Ditchburn*, 52 Pac. Rep. 694, 32 Ore. 538.) An attorney is liable to disbarment 'for obtaining a rule or order on false, equivocal or groundless suggestions.' Weeks on Attorneys and Counselors,—2d ed.—p. 170; *Clarke* v. *Gorman*, 3 Taunt. 492; *Rolfe* v. *Rogers*, 4 id. 191." *People* v. *Pickler*, 186 Ill. 64.

The insufficiency of the respondent's abstract because of its omission of important portions of the evidence has made necessary the filing of an additional abstract by the relator. Since the determination of the cause required a consideration of the evidence, the necessity of the use of the two abstracts and frequent reference from the one to the other, and sometimes to the record, has made the mechanical work of investigation of the case more difficult than usual. Under the rules and the order of reference the party filing exceptions to the commissioner's report is required to bring to the court such part of the record as is necessary to be considered on the exceptions. Where the findings of fact of the commissioner are objected to, all the evidence on the contested findings should be brought to the court and an abstract should be filed setting forth all the evidence upon the contested findings, whether favorable to the one side or the other. If the evidence is so fairly abstracted there will be no need of an additional abstract but the abstract filed will be taken to be correct. If the abstract is not fairly made the remedy of the other side is to file an additional abstract. An abstract which is so manifestly incomplete as to compel the filing of an additional abstract is of no benefit to the party filing it, for it only imposes on the opposite party the burden of making an additional abstract and on the court some extra labor. The relator has included in its brief a motion to approve and confirm the report of the commissioner and make the rule absolute for the failure of the respondent to bring to the court the evidence necessarily

considered by the commissioner in making his findings of fact and for his failure to present a proper printed abstract. This motion might have had the consideration of the court had our attention been called to it before the submission of the cause, but it was waived by not doing so. Had it been made earlier the respondent might perhaps have corrected his omission or might at least have been heard upon the question of his right to do so.

The commissioner's report finds that the respondent is the same person as the respondent in the case of *People* v. (*Neill*) *Johnson,* 332 Ill. 84, and his counsel argues that in the face of the fact that no evidence was offered of this identity and of the objection of the respondent to the relator's attempt to inject the previous case into this case, such finding is evidence that the cause of the respondent was prejudiced by calling attention to the former proceeding. The identity of the respondent in this case with the respondent in the previous case, or the fact that a previous information was filed against him, was not proper to be shown in this case. The report of the commissioner is in no way based on the previous case. It recognizes the good character of the respondent shown by the evidence and is based upon evidence clearly proving, entirely regardless of the former charge, the malfeasance charged in this case. His reputation for truth and veracity and for honesty and integrity was shown to be good and was properly taken into conisderation by the commissioner, but previous good character does not justify finding an attorney charged with dishonorable and unprofessional conduct innocent when the evidence clearly establishes his guilt.

An item of evidence which has not yet been referred to in this opinion is the testimony of Ruby L. Franklin, a public stenographer and court reporter, who testified that she was called to Judge Steffen's court room on April 19, 1929. Judge Steffen, she testified, was questioning the respondent about the pauper's affidavit in the Henderson case and she

took notes of the proceeding. She testified that she had her original notes with her, and she read from them as follows:

The court: "Mr. Johnson, is this man your client?

Mr. Johnson: "Yes, sir.

The court: "There is a pauper's writ in this file and he claims he never signed such papers—that he paid you. What about it?

Mr. Johnson: "Well, your honor, here is the situation: There was an agreement between Mr. Henderson and I that we would render service for service, and I—

The court: "Well, you had better take your client out and talk to him. He claims he paid you, and these costs will have to be paid before I will enter the decree.

Mr. Johnson: "I told him the day that this matter was heard that he would have to pay the costs and he said he did not understand it that way, and I suppose—

The court: "I don't like this way. You had better take him out and get together on this thing."

She testified: "That is all I have and that is all that was said." The book from which she read had on the outside of the front cover: "Stenographer's Note Book. No. 2. R. L. Franklin, stenographer. From June 25, 1929, to ..........., 192....." On the back cover appeared the following: "B-149130 Johnson vs. Same J. Fisher R 909-6/25/29." On the inner pages of the note book from the front cover she had written on the right side of each page to about the center of the book, about fifty pages. The last date on the last page written on is September 11, 1929, in consecutive order of dates. The book was reversed, and from the back page she wrote on the right side of the respective sheets of paper in the note book toward the front page to about the middle of the book, and on the last page written there appears a transcription dated April 19, 1929, as follows: "Steffen, Room 939, 12:45 Hen vs. Hen. 479993." She testified from her notes as to statements claimed to have been made by Judge Steffen in the Hender-

son case upon that date; that, as shown, the book was not opened until June 25, 1929, and this purports to have been taken April 19, 1929. She was cross-examined, and stated that she had several note books she carried with her and did not remember having used any more of this note book after that date; that she wrote on the outside of the book the words, "Beginning June 25, 1929," but could not tell what it meant and did not remember if that was the time she began to write in the book. There were entries in the note book relating to matters taken July 12, September 11, and after that a number of blank pages. She did not remember after she finished writing what appears under date of September 11, 1929—whether she turned the book over and wrote what appears on the reverse side of the pages in said book; that there is an entry in her handwriting of a matter transcribed October 18, 1929; that then follows on the next page the entry before Judge Steffen dated April 18, 1929, and that was the last page on the reverse side of the book that was written on, being the proceedings before Judge Steffen; that she could not explain how it was that she had April 18, 1929, after October, 1929. Upon re-direct examination by Haynes, for the respondent, she stated she did not follow a sequence as to dates when she took proceedings in her note books. When asked the reason why, she replied that "sometimes you get in a hurry and have several books in your bag; something like that; and maybe it is not contested and you just pick up either one."

The commissioner's conclusion as to Ruby L. Franklin's testimony was that it was false, and that it was nothing less than subornation of perjury by the respondent when he put her on the stand with that note book and took her testimony. We agree with the master's judgment about her testimony— that it was false. If it was false Johnson knew it was false, and his offer of the testimony with such knowledge necessarily greatly affected his own credibility as a witness.

At the December term, 1930, an order was entered that the cause be again referred to the commissioner, whose report had been filed, with directions to take the testimony of Ruby L. Franklin on further cross-examination and to cause the same to be transcribed and certified to the court. The commissioner has filed a supplemental report, which does not include any further testimony of Ruby L. Franklin because the relator was unable to find the witness. Witnesses were produced showing the efforts made to find her, and also showing statements made by her subsequent to her production by the respondent before the commissioner as a witness which were contrary to the evidence she then gave. This evidence has been transcribed and is certified to the court by the commissioner in his supplemental report. It is not competent evidence and we do not consider it in determining the issue in this case.

The respondent's answer contains a number of allegations regarding the objects, character, policy and standards of the relator, which are criticised as false, unjust and inequitable, by reason of which the relator's committee "entertains trivial, insignificant, malicious and groundless charges against your respondent, as well as against the whole group of lawyers who, because of wealth, origin or color, as aforesaid, fall outside of the classes so favored by your relator." If the criticism of the relator's attitude and actions were true the court would not be relieved of the duty of investigating the charges made against the respondent, nor the respondent from disbarment if those charges were found to be true. (*People* v. *Holt,* 279 Ill. 107.) The issues presented by the information must be determined from the evidence in the case, and there is nothing in the record which justifies the statement that the relator's committee entertains trivial, insignificant, malicious and groundless charges against the respondent or any group of lawyers who fall outside of favored classes.

An order will be entered making the rule heretofore entered in this case absolute and striking the name of the respondent from the roll of attorneys of this court.

*Rule made absolute.*