Joe F. ANDERSON, d/b/a Anderson
Funeral Home, Plaintiff-Appellee,

v.

Halbert CARTER, Jr., Commissioner of In-
surance and Thos. H. Lawrence, et al.,
Tennessee Board of Funeral Directors and
Embalmers, Defendants-Appellants.

Court of Appeals of Tennessee,
Middle Section.

March 29, 1974.

Certiorari Denied by Supreme Court
July 29, 1974.

Kirk C. Waite, Nashville, Charles H. McWherter, Martin, for plaintiff-appellee.

William B. Hubbard, Asst. Atty. Gen., Nashville, for defendants-appellants.

## OPINION

TODD, Judge.

On November 12, 1971, The Tennessee Board of Funeral Directors and Embalmers (hereafter called "the Board") found Joe F. Anderson and Anderson Funeral Home guilty of fraudulently collecting a $500.00 insurance claim check and revoked the funeral establishment license of Anderson Funeral Home, effective November 22, 1971. No other punitive action was taken against Joe F. Anderson individually.

On December 10, 1971, Joe F. Anderson d/b/a Anderson Funeral Home filed in the Chancery Court a petition for the writs of certiorari and supersedeas naming as defendants the Commissioner of Insurance and others constituting the Board.

The decree of the Chancellor states:

" . . . Court is of the opinion and finds that the findings of the Tennessee Board of Funeral Directors and Embalmers in its order dated November 12, 1971, against the petitioner, Joe F. Anderson, and Anderson Funeral Home, was based solely on evidence that cannot be tested by cross-examination, and is not based on substantial evidence. The Court further finds that the Board arbitrarily revoked the funeral establishment license of the petitioner and that its findings of fact in its order dated November 12, 1971, are arbitrary. The Court further finds that the action of the Board must be reversed and the charges against Joe F. Anderson d/b/a Anderson's Funeral Home should be dismissed.

"IT IS THEREFORE ORDERED, ADJUDGED AND DECREED by the Court that the charges against Joe F. Anderson d/b/a Anderson's Funeral Home be and the same hereby are dismissed and the petition for certiorari is sustained."

From said decree, the Board has appealed.

Initially, this Court must consider the following motion of the appellee:

"Comes the Appellee, Joe F. Anderson, d/b/a Anderson Funeral Home and moves the Court to strike from the record the bill of exceptions heretofore filed by the Appellants on the ground that counsel for the Appellants failed to give notice to counsel for the Appellee of the filing of the bill of exceptions as required by T.C.A. 27–110.

"Even though notice is certified on said bill of exceptions, no notice in fact was given and the Appellees' right to object to the contents of the bill of exceptions has therefore been *prejudice* requiring said bill of exceptions to be stricken from the record."

§§ 27–109, 27–110, T.C.A. read in pertinent part as follows:

"*27–109. Signing of bill of exceptions.* —The truth of the case being fairly stated in the bill of exceptions, the judge shall sign the same, in accordance with provisions of § 27–110, and the same shall become a part of the record of the cause.

"*27–110. Certificate as leave to file bill — Authentication — Death or inability of judge or chancellor.*—The certificate of approval of the parties or the certificate of the court stenographer upon said bill of exceptions or wayside bill of exceptions shall be sufficient leave to file same, when filed within thirty (30) days after the order or action which occasioned its filing, or an extension thereof.

"The lodging of said bill of exceptions or wayside bill of exceptions with the clerk of the trial court within the time allowed, along with certification by the filing party showing notice of such filing to all other interested parties shall complete the process of filing.

"Any party not certifying approval of said bill of exceptions or wayside bill of exceptions prior to filing may, within ten (10) days of such filing, file with the clerk of the trial court written objections detailing wherein such party questions the accuracy and/or authenticity of the bill of exceptions, and the trial judge shall make such changes in the bill of exceptions or wayside bill of exceptions, if any, as the truth requires.

"The certificate of approval upon said bill of exceptions or wayside bill of exceptions by the trial judge or chancellor and the authentication of the exhibits by the trial judge or chancellor shall be affixed to the bill and the exhibits as soon as practicable after the filing thereof or after the expiration of the aforesaid ten (10) day period, as the case may be, and such action of the trial judge or chancellor shall comprise the requisite authentication."

At the bar of this Court, counsel frankly informed this Court of the circumstances under which the bill of exceptions was approved by the Chancellor and filed with the Clerk and Master and other pertinent facts. Counsel for appellant stated frankly that he did not notify adversary of the filing of the bill of exceptions—this in spite of the certificate subscribed to the bill of exceptions as follows:

"Certificate of service; I hereby certify that I have given notice to adversary counsel of the filing of this Bill of Exceptions this September 25, 1973.

/s/ William B. Hubbard
William B. Hubbard
Assistant Attorney General"

In order to avoid misquotation or misunderstanding, counsel have been invited to submit their respective versions of the matter in question.

Counsel for appellant submitted the following written statement:

"Counsel stated to this Court that the 'Bill of Exceptions' filed herein was the record of proceedings before the Board. The hearing consisted of this record, the correctness of which was not challenged, argument of counsel and comments of the Chancellor. This constituted all the evidence.

"Counsel stated that in preparation of the appeal, he checked the transcript out of the Court's file, intending to 'lodge' it with the Clerk and Master as provided in the Statute. Pursuant to that aim, he contacted an assistant in the Clerk's office to type the 'Certificate of Service.' The intent was to forward counsel notice that day, as stated in the certificate. The Clerk's office, however, would not accept the transcript because the exhibits were not authenticated. After authenticating the exhibits the Chancellor inquired of counsel if there was any reason why the 'Bill of Exceptions' should not be authenticated. Counsel told the Chancellor that there was no reason in this particular case because the evidence at the court hearing had consisted solely of the record of the Board proceeding.

"Counsel stated that, after authentication, he deemed the objection by adversary would be not only useless but also was waived since the correctness of this record was not raised in open court."

Counsel for appellee has approved the following summary of his oral statement to the Court:

"Counsel for appellee conceded that the transcript as transmitted to this Court was correct and complete except for the omission of argument of counsel and comments of the Chancellor during the hearing."

■ The first question for determination is the meaning and intent of §§ 27–

109, 27–110, supra. Do said sections imply that the judge or chancellor may approve a bill of exceptions ex parte without notice to the appellee, thereby closing the door to any effective presentation of appellee's objections to the content of the bill of exceptions? From a reading of § 27–110, it would appear that such is not the present intent or force of the statute. Rather, it would appear that any proposed bill of exceptions which is not approved by all parties should be lodged with the Clerk and retained by him during the period of required notice. Under such circumstances, any approval by the judge prior to the expiration of the period of required notice would be at most tentative and subject to his power and duty to order corrections in response to exceptions duly filed.

■ As stated in Anderson v. Sharp, 195 Tenn. 274, 259 S.W.2d 521 (1953) the settlement of a bill of exceptions is a high judicial function. Due process in the exercise of such a function would certainly include the reasonable opportunity of all interested parties to be heard. Undoubtedly, this was and is one of the purposes of the most recent amendment of § 27–110, supra.

In the present case, however, this Court is faced with the unequivocal statement in the certificate of the Chancellor and the admission of counsel in open court that the transcript from the Board was all of the evidence presented at the trial. No insistence is made of any error or omission except that of the argument of counsel and comments of the Court, and no insistence is made that any part of said argument or comments is material to this appeal. The transcript of proceedings before the Board is composed of two well-bound volumes the concluding one of which bears the following authentication by the Chancellor:

"This is all the proof in the cause of ANDERSON VS. CARTER, ET AL, Rule No. A–1109.

/s/ Ben H. Cantrell
CHANCELLOR"

Each of said volumes is marked filed by the Clerk and Master, however neither bears any certification by anyone acting for the Board.

■ For proper authentication, the entire record before the board should have been bound in a single volume and duly certified by an official of the board, or, if separately bound, the separate parts should have been separately authenticated with a general certificate covering the entire transcript.

The transcript of the Board might have been transmitted to this Court as in the case of Roberts v. Knoxville Transit Lines, 36 Tenn.App. 595, 259 S.W.2d 883 (1952).

■ For transmission as a bill of exceptions, it should have been lodged with the Clerk prior to final certification by the Chancellor and his final certification should have been delayed to allow appellee ten days after notice to object.

■ Since the requisite notice was not given, the Chancellor would doubtless continue to have power to correct the bill of exceptions until the lapse of ten days after such notice. If it were made to appear to this Court that a real and justiciable controversy existed with reference to any omission or error in respect to any part of the bill of exception which is material to the appeal, then this Court would be disposed to remand the cause to the Chancellor for a resolution of such controversy.

Nevertheless, since it appears that appellee does not question the correctness of the record from the Board and does not assert that any benefit would be derived by this Court from the argument and comments which were omitted from the bill of exceptions, no useful purpose would be served by such a remand for further proceedings.

■ Under the special circumstances stated, the departures from statutory procedure are deemed harmless, T.C.A. §§ 27–116, 27–117, and the motion to strike

the bill of exceptions is respectfully over-ruled.

The assignments of the error of the board are as follows:

### I.

"The Chancellor erred in finding that the Tennessee State Board of Funeral Directors and Embalmers acted arbitrarily in revoking the funeral establishment license of Anderson Funeral Home for the reason that there was material evidence produced before the Board supporting the action of the Board.

### II.

"The Chancellor erred in weighing evidence under the common law writ of certiorari to determine whether the Board acted arbitrarily, illegally or in excess of its jurisdiction when there was material evidence in the record to support the action of the Board.

### III.

"The Chancellor erred in finding that because the check failed on the face of it to have a policy number, the name of the deceased or any indication for the reason it was paid, that the Board could not conclude that it was paid on the life insurance of Connie Gallimore when the insurance company provided a copy of the letter which accompanied the check to Anderson Funeral Home.

### IV.

"The Chancellor erred in finding that there were some unresolved factual disputes and, therefore, could not find Joe F. Anderson guilty of collecting the proceeds of this insurance without acting arbitrarily.

### V.

"The Chancellor erred in theorizing that the reason the Board took no action

against the funeral director's license of Joe F. Anderson was because the Board had reservations concerning the proof before it."

On September 15, 1971, the Board sent to appellee the following notices:

September 15, 1971

"Mr. Joe F. Anderson
Anderson Funeral Home
Dresden, Tennessee 38235

Dear Mr. Anderson:

Under the authority contained in Sections 62–524 and 62–525 Tennessee Code Annotated, Joe F. Anderson is hereby directed to show cause why his funeral director's license No. 2209 and embalmers license No. 3005, held by him, should not be suspended or revoked. This matter is set for hearing Monday, October 11, 1971, at 10 a.m., C.D.T. at the State Vocational School in McKenzie, Tennessee.

Joe F. Anderson is specifically charged with collecting check number A11948, dated October 12, 1965, from Pierce National Life Insurance Company, in the amount of $500.00, written on the life of Connie Gallimore, which should have been paid to the beneficiary, Mrs. Flora Doster, beneficiary of policy number 185–018(34). This claim was collected by Joe F. Anderson of Anderson Funeral Home without the knowledge and consent of the beneficiary, Mrs. Flora Doster. This is in violation of Section 62–524(A) (d).

Very truly yours,

TENNESSEE STATE BOARD OF FUNERAL
DIRECTORS AND EMBALMERS
/s/ E. H. Hooper
E. H. Hooper,
Secretary"

"Mr. Joe F. Anderson
Anderson Funeral Home
Dresden, Tennessee 38235

Dear Mr. Anderson:

Under the authority contained in Sections 62–524 and 62–525 Tennessee Code

Annotated, Anderson Funeral Home is hereby directed to show cause why the funeral establishment license number 258 held by it should not be suspended or revoked. This matter is set for hearing on Monday, October 11, 1971, at 10 a.m., C. D.T., at the State Vocational School in McKenzie, Tennessee.

Anderson Funeral Home is specifically charged with fraudulently collecting check number A11948, dated October 12, 1965, of Pierce National Life Insurance Company in the amount of $500.00 on the life of Connie Gallimore. This claim was collected by Anderson Funeral Home without the knowledge and consent of beneficiary, Mrs. Flora Doster, who held policy no. 185–018(34). This is in violation of Section 62–524(B) (a).

> Very truly yours,
>
> TENNESSEE STATE BOARD OF FUNERAL DIRECTORS AND EMBALMERS
> /s/ E. H. Hooper
> E. H. Hooper,
> Secretary"

The statutes referred to in said notices are in pertinent part as follows:

"*62–524. Grounds for refusal, suspension, or revocation of license.—* A. The board may refuse to grant, may suspend, or may revoke, or refuse to renew, any license granted to any person under the provisions of this chapter for any of the following reasons:

. . . . . .

(d) If the applicant therefor or holder thereof has been guilty of immoral or unprofessional conduct;

. . . . . .

B. In addition, the board may refuse to grant, may suspend, or may revoke, or refuse to renew, any license granted for the operation of a funeral establishment under the provisions of this chapter for any of the following reasons:

(a) Misrepresentation or fraud in the conduct of the business of the funeral establishment; . . . ."

"*62–525. Hearing on suspension, revocation, or refusal to renew license.—*No action to suspend, revoke, cancel, or refusal to renew any license shall be taken by the board until the accused has been furnished with a statement of the charges against him and the notice of the time and place of hearing thereof, the furnishing of such notice and the charges to be given said accused at least fifteen(15) days prior to the date of hearing. . . . If, upon such hearing, the board finds the charges true, it may revoke or suspend the license of the accused person or refuse to renew same. . . ."

The following events leading to the charges are uncontroverted:

For some time prior to the accusations herein, the appellee operated a funeral establishment in Dresden, Tennessee. His only competitor was S. T. Bolin Funeral Home, hereafter called "Bolin." Prior to his death on September 14, 1965, a Mr. Connie Gallimore procured a $500.00 life insurance policy with Pierce National Life Insurance Company through an agent who had some connection with Bolin. Said Connie Gallimore also had a "burial policy" with Bolin which assured certain benefits as to the cost of burial.

Shortly before his death, Connie Gallimore "transferred" his "burial policy" to Anderson Funeral Home, operated by Joe Anderson, and said latter establishment attended to the details of his funeral and was fully paid for such services.

Mrs. Flora Doster, sister of the deceased, was aware of said $500.00 life insurance policy and, since it was procured through a person connected with Bolin, she sought the assistance of the officers of Bolin to obtain collection of same. So far as the record shows, the policy was never found, and Mrs. Doster was under the impression that the several years delay in payment were attributable to inability to find the policy, or at least to supply its number.

Through the efforts of Bolin, the Pierce Life Insurance Company was induced to furnish evidence of settlement of a claim under said policy as a result of which Joe F. Anderson paid to Mrs. Doster the sum of $200.00 on September 11, 1971 and $300.00 on September 13, 1971, "to keep out of court." Mrs. Doster was reluctant to take the $500.00 from Mr. Anderson because she thought he was an honest man and that Bolin, rather than Anderson, was at fault.

Omitting the lengthy testimony, largely hearsay and circumstantial, the evidence critical to the involvement of appellee in the collection of the $500.00 from the insurance company is documentary, and consists of the following:

1. A letter from appellee to the insurance company as follows:

ANDERSON'S FUNERAL HOME
Dresden, Tennessee
Sept. 18, 1965

Re: Connie Gallimore
RFD #1
Dresden, Tenn.
Policy No. 185018

"Dear Sir,

The above named died 9–14–65. His family has asked me to request Death Claim form for payment from his Pierce National Life Ins. policy.

Will you please forward Death Claim to Andersons Funeral Home as soon as possible.

Thank you—

Joe F. Anderson"

2. A "Proof of Loss and Death" and claimant's statement on the form of the insurance company, bearing date, Oct. 4, 1965, and signature of Mrs. Flora Doster witnessed by Joe F. Anderson. Said instrument states that Anderson Funeral Home conducted the funeral services.

3. A bill from Anderson Funeral Home dated September 14, 1965, for $650.00 signed by Joe F. Anderson. Name of deceased is not stated therein.

4. A copy of a letter of October 12, 1965 from the insurance company to Anderson Funeral Home stating that a $500.00 check is enclosed in settlement of policy on life of Connie Gallimore.

5. Cancelled check of Pierce National Life Insurance Company to Andersons Funeral Home dated October 12, 1965 in the amount of $500.00. Said check bears endorsement:

"Anderson Funeral Home
Joe F. Anderson"

Each of the foregoing documents was a photostatic copy presented by an employee of the insurance company who testified that said documents had been sent to him by the home office of the insurance company. They purport to be photostatic copies of business records of the insurance company, but were not authenticated and qualified under the Uniform Photographic Copies of Business and Public Records as Evidence Act, § 24–711, T.C.A., or the Uniform Business Records as Evidence Act, §§ 24–712 to 24–715, T.C.A. However, when said papers were offered by the witness on direct examination, counsel for appellant stated:

Q38. Mr. McWherter, I would like to have those papers entered as an exhibit if I may.

(Said papers were accordingly marked and filed as Exhibit VIII and will be found inserted herein.)"

Later in the examination of the same witness, the following occurred:

"REDIRECT EXAMINATION
BY GEN. HUBBARD:

1. I would like to enter these documents as an exhibit to his testimony.

MR. McWHERTER: Well, since this is an informal proceeding, I won't object.

(Said documents were accordingly marked and filed as Collective Exhibit VIII and have been inserted in the record on Page 88a.)"

The record contains no objection to the consideration of said documents by the Board. Moreover, the original of said cancelled check was introduced and exhibited to the record.

In addition, an officer of Bolin offered as a part of his testimony a photostatic copy of the claim record of the insurance company showing that payment under the policy was made to "Mort," and that "Mortician in Charge" was Anderson's Funeral Home. No objection was made to the introduction of this evidence.

Appellee testified that he had no personal knowledge of the check, that the endorsement "looked like my scribbling," and that he had been unable to locate his records of receipts during the time in question.

In spite of the protestations of appellee that he would never knowingly do such a thing, there is, by his acquiescence, evidence in the record to show that Anderson's Funeral Home solicited and received payment of the $500.00 insurance claim and failed to account for same for nearly five years.

■ The first question to be answered is whether the foregoing constitutes a violation of the foregoing statutes, either or both. It can hardly be denied that obtaining funds due a customer and failing to account for same over so long a period of time is "immoral or unprofessional conduct." Even if it be said that the entire episode resulted from an unfortunate lapse of memory and there was no actual intent to defraud, nevertheless, if only a lapse or omission of business procedure is involved, this certainly involves "unprofessional conduct."

■ "Professional Conduct" of a funeral director or funeral home would certainly include efficiency, accuracy, and fidelity in the handling of funds received on behalf of a customer. Therefore failure to show these virtues would be "unprofessional conduct."

Black's Law Dictionary, Fourth Edition, page 1707, contains the following definition:

"UNPROFESSIONAL CONDUCT. That which is by general opinion considered to be grossly unprofessional because immoral or dishonorable. State Board of Dental Examiners v. Savelle, 90 Colo. 177, 8 P.2d 693, 697. That which violates ethical code of profession or such conduct which is unbecoming member of profession in good standing. People v. Gorman, 346 Ill. 432, 178 N.E. 880, 885. It involves breach of duty which professional ethics enjoin. People v. Johnson, 344 Ill. 132, 176 N.E. 278, 282."

See also authorities annotated under the title, "Unprofessional Conduct." 43A Words and Phrases, 83.

As to the statutory charge of "Misrepresentation or Fraud," the acts previously mentioned, if knowing and intentional could be classified as fraud. Church of Christ v. McDonald, 180 Tenn. 86, 171 S. W.2d 815, 1943, states that in its general sense, fraud includes that which is inequitable or unjust. Fowler v. Tankersley, 32 Tenn.App. 264, 222 S.W.2d 395 (1946) and Murrah v. Sanford, 35 Tenn.App. 347, 245 S.W.2d 639 (1951) define fraud as being synonymous with "unconscientious" and "inequitable."

■ The Board was entitled to, and evidently did, reject the theory of appellant that the entire episode was an innocent lapse on his part. On this basis, the Board was justified in finding fraud.

■ Appellee correctly states in his brief that, upon the common law writ of certiorari, the reviewing court reviews only the essential legality of the action of the administrative body, and that, under T.C.A.

§ 27–801, the common law review is limited to the inquiry of whether the administrative body has exceeded its jurisdiction or acted illegally.

It is true, as insisted by appellee, that "acting illegally" includes finding facts unsupported by evidence in the record. Likewise, it is true that the reviewing court must review the evidence to determine whether there is any evidence to support the findings.

This Court has reviewed the evidence and has cited, supra, evidence which supports the factual finding of the Board.

Appellee insists that all of the evidence shows that appellee knew nothing of the insurance policy until eight months after the death of Connie Gallimore. There is testimony to this effect, but the documentary evidence, supra, is to the contrary. As conceded in appellee's brief, the reviewing courts (including this Court) do not weigh evidence before boards and commissions upon the common law writ of certiorari.

Appellee insists that there was a failure to prove certain vital facts, as follows:

1. *Issuance of policy to Connie Galli-more.* If necessary to the decision (which is doubtful) the existence (ergo issuance) of the policy is shown by the documents discussed supra.

2. *Signature of Joe F. Anderson on any documents.* Appellee did not deny his signature on the check, indeed he admitted it was "probably his scribbling." § 24–506, T.C.A., furnishes a presumption of the genuineness of the check endorsement. Having that presumably genuine signature, the Board was entitled to compare same with other purported signatures on other documents and to reach its own conclusions as to their authenticity. § 24–708, T.C.A.

3. *Knowledge of policy by Joe F. Anderson.* Discussed supra.

4. *Knowledge of Pierce Insurance Company by Joe F. Anderson.* Discussed supra.

5. *Receipt or endorsement of check by Joe F. Anderson.* Endorsement (ergo receipt) discussed supra.

6. Deposit of check to credit of *Joe F. Anderson.* Not necessary, since endorsement raises presumption of receipt of proceeds in some form.

7. *Connection of check with policy and death of Connie Gallimore.* See documents numbered 2 and 4, supra and "copy of claim record" discussed supra.

8. *Correspondence from Dilday to Pierce.* Immaterial.

The various contentions of appellee have presented the oft-raised but seldom clarified problem of the admissibility of evidence before administrative boards and its relationship to judicial review of the actions of boards and commissions.

In 73 C.J.S. Public Adminstrative Bodies and Procedure § 125 pp. 445, 446 is found the following:

> "*General rules as to the admissibility of evidence are frequently relaxed in administrative proceedings.*
>
> .    .    .    .    .    .
>
> "Any evidence which has probative force and tends to prove or disprove a material fact is generally admissible in an administrative proceeding, and an administrative board may receive incompetent evidence, including hearsay; or at least, an administrative proceeding is not rendered invalid by the receipt of incompetent or hearsay evidence unless the receipt of such evidence results in a denial of substantial justice. .    .    ."

In the same article at § 177, p. 522, is found the following:

> "*Evidence.* Objections or questions relating to the evidence in the proceedings before the administrative agency ordi-

narily will not be considered for the first time on review of the orders or decisions of such agency. . . . "

Also in § 223, of the same article is found the following:

"An administrative agency's findings as to the facts which are supported by substantial evidence are binding and conclusive on, and may not be disturbed or set aside by, a court, in the absence of fraud or bias, where a hearing complying with the requirements of the process of law was accorded, the agency acted within its jurisdiction and authority, and the findings were made in compliance with law and were the result of fair consideration. In such case, a court must accept the findings as final and true, and may not substitute its own judgment or finding of fact for that of the agency.

. . . . . .

" 'Substantial evidence,' within the meaning of constitutional or statutory rules governing judicial review of an administrative agency's factual findings, is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." 73 C.J.S., pp. 588, 589, 590, 592

In NLRB v. Remington Rand, 94 F.2d 862, 873 (2d Cir. 1938), cert. den., 304 U.S. 576, 58 S.Ct. 1046, 82 L.Ed. 1540, Judge Learned Hand stated:

". . . no doubt that does not mean mere rumor will serve to 'support' a finding, but hearsay may do so, at least if more is not conveniently available, and if in the end the finding is supported by *the kind of evidence on which responsible persons are accustomed to rely in serious affairs."* (emphasis supplied) 94 F.2d 873.

 The acquiescence of appellee in the introduction of documentary evidence gives such evidence all of the competency which it would have had if duly authenticated. As thus rendered competent, such documents unquestionably support the find-ing of the Board. This being true, the Chancellor was, and this Court is, without power to reweigh the evidence and reach a different factual conclusion.

The decree of the Chancellor is reversed. The writ of certiorari is dismissed. The order of the Board is affirmed.

The costs of the cause, including costs of this appeal, are adjudged against the appellee, Joe F. Anderson.

Reversed.

SHRIVER, P. J., and ADAMS, Special Justice, concur.