**Alvin C. SPUNT, Plaintiff-Appellant,**

v.

**Eugene W. FOWINKLE, Joe C. Carr and Harlan Matthews, acting as members of the Licensing Board for the Healing Arts, Defendants-Appellees.**

Court of Appeals of Tennessee,
Middle Section.

Feb. 24, 1978.

Rehearing Denied March 23, 1978.

Certiorari Denied by Supreme Court July 31, 1978.

W. A. Moody, Nashville, for plaintiff-appellant.

Brooks McLemore, Atty. Gen., Frank J. Scanlon, Asst. Atty. Gen., Nashville, for defendants-appellees.

## OPINION

SHRIVER, Presiding Judge.

### The Case

This is an appeal by plaintiff, Alvin C. Spunt, a chiropractor, from a decision of Chancellor C. Allen High in the Chancery Court for Davidson County, wherein he affirmed a decision of the defendants, members of the State Licensing Board for the Healing Arts, acting in their official capacity, whereby they suspended for sixty days the license of plaintiff to practice chiropractic in Tennessee.

### The Proceedings Below

Plaintiff-petitioner, Alvin C. Spunt, on November 12, 1974, filed his Petition for Writs of Certiorari and Supersedeas in the Davidson County Chancery Court wherein it was set forth that petitioner was charged by the defendant Licensing Board for the Healing Arts of the State of Tennessee with violation of T.C.A. § 63–123(2), (11) by exceeding the scope of his privileges as a licensee and invading the field of medicine as defined in T.C.A. § 63–4608 (sic) (§ 63–608), and that as a result of said charges a hearing was had before said Board wherein

the charges were sustained and petitioner's license suspended for a period of sixty days.

It is charged that there was no evidence to support the findings of the Board which were, therefore, arbitrary, and that the Board Chairman, Eugene W. Fowinkle, was disqualified by reason of economic interests from passing on the charges brought against petitioner, and that Board members Harlan Matthews and Joe C. Carr were disqualified by virtue of their lack of knowledge in the scientific exposition of the subject matter.

It is further charged that the action of the Board was unconstitutional as applied to this petitioner because it deprives him of his liberties, privileges and immunities without due process of law, and, further, because the Act purports to confer judicial powers upon an administrative tribunal composed of interested persons; that the Licensing Board for the Healing Arts of the State of Tennessee is without jurisdiction over the practice of chiropractic, and, further, that the Board of Chiropractic Examiners had previously passed on an identical action favorably to the petitioner and, therefore, the action of that Board was res judicata.

The prayer of the petition is for the issuance of a Writ of Certiorari requiring the filing in the Court of the transcript of the proceedings before the Board, and for the issuance of a Writ of Supersedeas setting aside the action of the Board.

The Order of Suspension of the Licensing Board for the Healing Arts was filed as a part of the record wherein the findings of the Board were set out in detail.

Thereafter, the Chancellor entered an Order stating:

"It appearing to the Court that counsel for the defendants do not oppose the petitioner's application for supersedeas in aid of certiorari, it is ORDERED that a writ of supersedeas issue staying the effect of the Order of Suspension appealed from pending final action on the petition by this Court or on appeal, upon the posting of a supersedeas bond in the amount of $250.00."

The Answer of the defendants admits certain allegations in the petition with respect to the proceedings and denies all allegations with respect to lack of jurisdiction and competence of members, etc.

After a hearing the Chancellor, on March 23, 1977, filed an exhaustive and well-reasoned Memorandum Opinion wherein, among other things, he held:

"This case is before the Court for review of the action of the Licensing Board of Healing Arts suspending for sixty (60) days plaintiff's license to practice chiropractic. The writ of certiorari was granted in the matter prior to the passage of the Uniform Procedures Act, T.C.A. § 4–501, et seq. Review is made, therefore, pursuant to the common law writ of certiorari. T.C.A. § 27–801.

The scope of review under a common law writ of certiorari is limited to the inquiry of whether the administrative body has exceeded its jurisdiction or acted illegally. *Anderson v. Carter*, 512 S.W.2d 297 (Tenn.App.1974).

By letter of April 22, 1974, the Board notified plaintiff that he was charged with violating T.C.A. § 63–123(2) and § 63–123(11) by exceeding the scope of his license under § 63–401 and invading the field of medicine by making pap smears in the course of examinations, diagnosis and treatment; by drawing and analyzing blood in the course of examination, diagnosis and treatment; by conducting a complete physical examination in the course of examination, diagnosis and treatment.

A hearing was held before the Board on September 10 and 11, 1974. Plaintiff presented witnesses, testified in his own behalf and was represented by counsel.

Plaintiff testified that during the course of his practice he did conduct along with general visual and manual examinations a general physical examination which included making pap smears and taking blood for analysis.

Other licensed chiropractors testified that performing physical examinations on

their patients including drawing blood and making pap smears were done in order to diagnose the patients' condition and to determine the appropriateness of chiropractic treatment.

The Board found that the plaintiff did take blood specimens and pap smears in the course of his practice of chiropractic in violation of T.C.A. § 63–608. The Board found no evidence of unprofessional conduct by plaintiff and made no finding as to violation of § 63–123(2).

The Board exercised its authority under T.C.A. § 63–123 and suspended plaintiff's license for sixty (60) days.

. . . . .

A person is regarded as practicing medicine who 'shall treat or profess to treat, operate on, or prescribe for any physical ailment or any physical injury to or deformity of another,' but chiropractors 'not giving or using medicine in their practice' are not to be regarded as practicing medicine. T.C.A. § 63–608.

The exception made in T.C.A. § 63–608 for chiropractors not giving or using medicine in their practice does not preclude a finding that a chiropractor has engaged in the practice of medicine in violation of T.C.A. § 63–123(11)."

The Opinion continues by reciting that the practice of doctors of medicine covers all human illnesses and diseases, their diagnosis, treatment and prevention, citing *Ison v. McFall*, 55 Tenn.App. 326, 400 S.W.2d 243 (1964), whereas, the field of chiropractic has been construed to be limited by statute to the treatment of illnesses and diseases of the human body which chiropractors reasonably believe can be aided by manipulation of the spine, the chiropractor being licensed to engage in the science of palpating, analyzing and adjusting the articulations of the human spinal column and adjacent tissue by hand, and that the field of chiropractic encompasses no more than these activities.

It is pointed out that although the plaintiff argues persuasively that chiropractors are trained to do diagnostic procedures, the field of chiropractic, as defined by statute, does not permit the performance of these diagnostic procedures which will not be presumed to be permitted implicitly in the language of the statute.

It is further held in said Opinion that the Board of Healing Arts did not act arbitrarily or illegally in determining that the procedures performed by the plaintiff extended into the field of medicine for which he was not licensed, and, further, that the Board did not deprive the plaintiff of property without due process, and that under T.C.A. § 63–122, the Licensing Board of Healing Arts has jurisdiction of all licensed practitioners of the healing arts in Tennessee.

It is noted in said Opinion that the proceedings of the Licensing Board were not rendered illegal by the presence of Dr. Fowinkle, a licensed medical doctor, and by the presence of the other members but that the plaintiff was afforded a full and fair hearing by the Board, and, finally, that the statute as construed by the Board is not unconstitutional.

The Opinion concludes by stating:

"The Board has not exceeded its jurisdiction or acted illegally."

A decree was entered implementing the foregoing Opinion and an appeal prayed for, granted, and perfected to this Court.

### Assignments of Error

Appellant has filed seven assignments of error which may be summarized by stating that the Chancellor erred in holding that the Licensing Board for the Healing Arts had not exceeded its jurisdiction or acted illegally and arbitrarily; that it was error to hold that the field of chiropractic as defined by statute does not permit the performance of diagnostic procedures such as those performed by petitioner; and that it was error to hold that the diagnostic procedure of petitioner invaded the field reserved exclusively for medical doctors.

### The Facts and Our Conclusions

The material facts involved in the case at bar are not in dispute.

There is no question that the Licensing Board of the Healing Arts cited Dr. Spunt for a hearing before the Board on a charge of having violated the statutes regulating the healing arts and, specifically, the practice of chiropractic by engaging in certain diagnostic procedures which the Board insisted were an invasion of the field of medicine reserved to doctors of medicine.

After a full hearing, the Board sustained the charges.

As is stated by counsel for plaintiff-appellant, the issues for decision on this appeal are: (1) Whether the State of Tennessee acting by and through the Board of Healing Arts has authority to restrict, in the absence of an applicable statute, Dr. Spunt from performing differential diagnostic procedures; and (2) Did the State violate the due process clause of the Constitution in its order suspending for sixty days Dr. Spunt's license to practice his profession.

The record shows that Dr. Spunt, testifying before the Board, readily admitted that he made Pap smears, drew blood for analysis and conducted physical examinations in the course of his practice and he argued that he was by training and experience qualified to perform such procedures and that they were performed only for the purpose of making a differential diagnosis to determine whether or not an individual patient had a condition for which chiropractic treatment would be appropriate and safe. Also, several other licensed Tennessee chiropractors testified that they routinely performed similar procedures for the same purpose and that it was a common practice among chiropractors in Tennessee.

On the other hand, the State argues that despite any apparent ability of Dr. Spunt to perform such procedures, or in spite of any merit in their being performed, the statute defining the practice of chiropractic does not authorize chiropractors to perform such procedures which are, in effect, the practice of medicine for which Dr. Spunt holds no license.

The applicable statutes of the State embraced in Title 63, Professions of the Healing Arts, creates in Section 63–101 a Board for the Healing Arts composed of the Commissioner of the State Department of Public Health, the Secretary of State, and the Treasurer of the State.

Section 63–102 defines the scope of powers and recites that the Board shall have the exclusive power and authority to issue all licenses or duplicates of licenses authorizing the practice of the healing arts or any branch thereof in the State of Tennessee, and for the purpose of this chapter, the practice of the healing arts is defined as offering or undertaking to diagnose, treat, operate on, or prescribe for any human pain, injury, disease, deformity, or physical or mental condition.

And, under 63–122, the State Licensing Board for the Healing Arts, in addition to the powers and duties vested in it by previous sections, is given concurrent power with that vested in the various Examining Boards authorized to enforce compliance with and regulation of the practice of the healing Arts.

Section 63–123 providing grounds for suspension or revocation of license and Section (11) thereunder states:

"(11) Unlawful invasion of the field of practice of any profession mentioned in this chapter which the licensee is not licensed to practice."

Under Chapter 4, entitled "Chiropractors," Section 63–401 provides:

"Chiropractic is defined as the science of palpating, analyzing and adjusting the articulations of the human spinal column and adjacent tissues by hand."

And, Section 63–608, under the title "Medicine and Surgery," defines the practice of medicine, stating:

"Any person shall be regarded as practicing medicine within the meaning of this chapter who shall treat, or profess to treat, operate on, or prescribe for any physical ailment or physical injury to or deformity of another."

It is then provided that the section shall not be construed to apply to the administra-

tion of domestic or family remedies in cases of emergency, nor to dentistry, nor to veterinary surgeons, or to osteopaths, or chiropractors not giving or using medicine in their practice, "or to opticians . . . or to Christian Scientists."

■ Thus it is seen that T.C.A. § 63–123(11) vests in the State Licensing Board for the Healing Arts the authority to discipline any healing arts practitioners who are guilty of unlawfully invading another field of the healing arts for which the practitioner is not licensed and any licensed chiropractor who, in the practice of his profession, engages in activities beyond the scope of those authorized in § 63–401, T.C.A., may be found to have invaded the field of medicine as defined in § 63–608, T.C.A., and as was held in *Ison v. McFall*, 55 Tenn.App. 326, 400 S.W.2d 243 (1964).

It is argued by counsel for the defendant Board that neither Code Section 63–412 and 63–415, nor the former Basic Science Law, Chapter, 2, Title 63, T.C.A., contain any implied legislative authority for a chiropractor to draw blood or make Pap smears for the purpose of making a diagnosis, and that such procedure is contrary to the provisions of the Tennessee Medical Laboratory Act, T.C.A., § 53–4101, et seq.

The Chancellor agreed with counsel for the defendant Board in these particulars and so held.

■ Counsel for Dr. Spunt earnestly argues that there is no specific statutory provision prohibiting him from performing the relatively simple procedures of drawing blood and making Pap smears and that there are no provisions which restrict this procedure to use by doctors of medicine. While it is true that there are no specific provisions in the Healing Arts Law or in the statutes providing for the practice of chiropractic which specify who may or may not perform these procedures, yet it is to be noted that the Board's decision was not based entirely on a finding that Dr. Spunt performed the purely mechanical procedures of drawing blood and making Pap smears. On the contrary, the Board found

that Dr. Spunt performed these procedures for the purpose of diagnosing various human diseases and ailments which were unrelated to chiropractic practice and that, therefore, Dr. Spunt went beyond the practice of chiropractic and invaded the field of medicine.

The mere mechanical process of making a Pap smear or of drawing a specimen of blood is not the question involved here. It is what was done in connection therewith and Dr. Spunt freely admitted that he examined these specimens to determine for himself whether or not there were abnormalities, such as cancer, and with respect to blood specimens, for determining the existence of certain ailments and in instances where there seemed to be complications he might send these specimens to a laboratory, but, after all, he was making the diagnosis by performing these examinations and then acting upon them.

Thus, it is plausibly argued that these procedures do not fall within the definition of chiropractic as defined in T.C.A. § 63–401.

This Court in *Ison v. McFall*, supra, compared the practice of medicine and the practice of chiropractic, stating:

" . . . In view of the definition given by T.C.A. § 63–401 . . . we construe the field of chiropractic to be limited to the treatment of those illnesses and diseases of the human body which doctors of chiropractic reasonably believe can be aided by the manual manipulation of the spine. On the other hand, the field of doctors of medicine covers all human illnesses and diseases and their diagnosis, treatment and prevention."

T.C.A. § 53–4122 provides:

"The collection of specimens shall only be performed under the immediate supervision of a physician, duly licensed dentist, medical laboratory director, medical laboratory supervisor, or medical laboratory technologist."

■ In other words, the collection of human specimens can only be performed by physicians, dentists, or licensed laboratory

**265**

personnel under the immediate supervision of a physician or other recognized technologist.

As is pointed out by the Chancellor in his Memorandum Opinion, the scope of review under the common law writ of certiorari is limited to the inquiry of whether the administrative body has exceeded its jurisdiction or acted illegally or arbitrarily, citing *Anderson v. Carter*, 512 S.W.2d 297 (Tenn.App.1974). Also see *Hoover Motor Express Co. v. Railroad & Public Utilities Commission*, 195 Tenn. 593, 261 S.W.2d 233 (1953), where it was said:

"Common law writ of certiorari does not bring up for determination any question except the question whether the inferior board or tribunal exceeded its jurisdiction, or acted illegally, arbitrarily or fraudulently."

While the writer of this Opinion sympathizes with the position of Dr. Spunt and other licensed chiropractors in the State, nevertheless, the problem is one which properly addresses itself to the Legislature since the decisions of the Courts in Tennessee are uniform in their adherence to the proposition that if there is material and substantial evidence to support the findings of the Board or Commission, it will be affirmed unless there is a clear showing of illegality or lack of jurisdiction or arbitrariness, which we do not find to exist in the case at bar.

It results that the assignments of error are overruled and the judgment of the Chancellor is affirmed.

AFFIRMED.

TODD and DROWOTA, JJ., concur.