James R. MORRIS, Plaintiff/Appellant,

v.

The CLARKSVILLE–MONTGOMERY COUNTY CONSOLIDATED BOARD OF EDUCATION and Dr. Charles Lindsey, Defendants/Appellees.

Court of Appeals of Tennessee, Middle Section, at Nashville.

Aug. 4, 1993.

Application for Permission to Appeal Denied by Supreme Court Nov. 29, 1993.

Charles Hampton White and Rebecca Wells–Demaree, Cornelius & Collins, Nashville, for plaintiff/appellant.

Ross H. Hicks, Cunningham, Mitchell, Hicks & Ivandick, Clarksville, and Henry Haile, Nashville, for defendants/appellees.

### OPINION

TODD, Presiding Judge.

This is a judicial review of the action of the captioned School Board in discharging the captioned plaintiff from his position of band instructor. The Trial Court dismissed plaintiff's suit, and plaintiff appealed. Plaintiff's brief contains no "Statement of the Issues Presented for Review" as required by T.R.A.P. Rule 27(a)(4). Plaintiff's written argument presents two propositions which will be treated as presenting issues. They are:

I. The evidence preponderates against the Chancellor's findings and conclusions that Morris is guilty of the charges.

II. The Chancellor erred in dismissing Morris.

The Board presents the following issues for review:

1. Did the Trial Court err in refusing to consider the issue of sexual abuse of a student by the teacher in this case, where the most serious charge against the teacher before the Board of Education concerned this allegation.

2. Did the Trial Court err in refusing to consider the evidentiary record before the Board of Education?

3. Did the Trial Court err in refusing to consider the criminal court testimony of the student victim Paul Smith, after refusing to allow the School System a continuance in order to produce the student for in-person testimony?

4. Did the Trial Court err in refusing to consider the deposition of former student William Scott Thompson, a Memphis resident, concerning his experience of sexual abuse at the hands of James Morris?

—Administrative Proceedings—

On September 11, 1990, the Director of Schools presented to the Board the following written statement of charges:

### WRITTEN CHARGES AGAINST JAMES MORRIS

I, Charles Lindsey, Director of the Clarksville–Montgomery County School System, charge James Morris, a tenured teacher assigned to Northeast High School, with the following offenses and recommend that Mr. Morris be advised of said charges and, if they are proved to be true, that James Morris be dismissed from his position as a tenured teacher in the Clarksville–Montgomery County School System.

The specific offenses with which I charge Mr. Morris are:

1. Conduct unbecoming to a member of the teaching profession in that:

a. he invited and allowed Paul Smith, one of his students to stay overnight in his home on more than one occasion and slept in the same bed with him and had sexual contact with the student and allowed the student to have sexual contact with him, such contact also occurring on more than one occasion.

b. he invited and allowed other male students to stay overnight at his home and to sleep in the same bed with him, in disregard of the direction of the Principal and Assistant Principal of Northeast High School who had advised him that students should not stay overnight at his home.

On the advice of the attorney for the school board, I am precluded from discussing with you the exact nature of the evi-

dence supporting these charges except in the presence of Mr. Morris at a hearing as provided for by T.C.A. 49–5–512.

On the same date, the Board adopted the following resolution:

Be it resolved that the Clarksville–Montgomery County Board of Education has entertained written charges made by Dr. Charles Lindsey, Director of Schools, against Mr. James Morris, a tenured teacher in the Clarksville–Montgomery County School System, and, in the opinion of the Board, the charges are of such nature as to warrant the dismissal of the said James Morris, if, in fact, the charges, or any one of them, are true. The charges shall be made a part of the Minutes of this Board, and the Director shall give the teacher a copy of said charges, this Resolution, and a copy of the form which has been provided by the State Commissioner of Education, advising teachers as to their legal duties, rights, and recourses under the Tennessee Tenured Teacher Act.

On September 12, 1990, the Director wrote to plaintiff enclosing copies of the above quoted charges and resolution of the School Board.

Pursuant to T.C.A. § 49–5–512, plaintiff demanded a hearing before the Board which held a hearing on December 17 and 18, 1990.

On December 19, 1990, the Director sent the following letter to plaintiff:

In accordance with provisions of T.C.A. 49–5–512 notice is given of the Board's findings and decision made as a result of the hearing conducted on December 17 and 18, 1990.

The Board found the evidence supported the charges presented to you by correspondence dated September 12, 1990.

The Board voted to dismiss you from your position as a tenured teacher with the Clarksville–Montgomery County School System. This action was taken on December 18, 1990.

No other record of the action of the Board is found in this record.

—Proceedings in the Trial Court—

On January 18, 1991, the plaintiff initiated this action for judicial review.

The case was heard in the Trial Court on August 17, 1992. During the hearing, a five volume transcript of the hearing before the Board with exhibits was offered, but the Trial Judge declined to examine them. The transcript of the testimony of Paul Smith in a criminal prosecution of plaintiff and deposition of William Scott Thompson were offered and excluded by the Trial Judge. The Board requested a continuance to obtain the attendance of a material witness who had been subpoenaed, which request was denied by the Trial Judge.

After hearing a number of witnesses, including plaintiff, the Trial Judge filed a comprehensive memorandum which was not incorporated into the final judgment.

The memorandum states in substance:

1. The proof does not sustain plaintiff's charge of violation of the "Sunshine Law."

2. The proof showed plaintiff to be guilty of two violations of T.C.A. § 49–5–501(3) consisting of:

(a) Conduct unbecoming a member of the teaching profession, and

(b) Insubordination by failure to abide by the instruction of the Principal and Assistant Principal to desist from such conduct.

The final judgment of the Trial Court reads as follows:

This cause came on to be heard on the 17th day of August, 1992, upon the pleadings, testimony of witnesses in open Court, and upon the entire record from all of which the Court is of the opinion that for the reasons stated in the Court's memorandum opinion, the evidence preponderates in favor of the Defendants, wherefore,

IT IS ORDERED, ADJUDGED, AND DECREED that the issues joined are found in favor of the Defendants and that this cause be dismissed and the costs of same be adjudged against the Plaintiff for which execution may issue.

—Standard of Review—

■ At the material times, the required standard of judicial review of decisions of this type was *de novo*. T.C.A. § 49–5–513(g) (1990 permanent volume). *Cooper v. Williamson County Board of Education,* Tenn. 1987, 746 S.W.2d 176. The cited authority states:

... The statute at issue does not attempt to limit the review in Chancery Court to the record before the school board and thus expansively provides that the hearing *de novo* "may be on deposition and interrogatories, or on oral testimony," T.C.A. § 49–5–513(g); these terms are used in their ordinary sense in this statute. We think that a hearing *de novo* requires the Chancellor to redetermine both the facts and the law from all the evidence before the court. While not fully analogous, this type of review is more akin to an appeal from General Sessions Court pursuant to T.C.A. § 19–1–118 than to the review of the findings of a trial court in a nonjury case by an appellate court under Rule 13, T.R.A.P. Under Rule 13, T.R.A.P., an appellate court does

"not *try* a case *de novo* as does a Circuit Judge on an appeal from the General Sessions Court. In a *de novo trial* the Circuit Judge does not review the action of the General Sessions Judge and is not concerned with what took place in the General Sessions Court nor the propriety of the lower Court's action; and no presumption of correctness attaches to the General Sessions judgment. The matter is *tried* as if no other trial had occurred."

*Hohenberg Bros. Co. v. Missouri Pacific Railroad Co.,* 586 S.W.2d 117, 119 (Tenn. App.1979) (emphasis in original). Unlike the situation in an appeal to a court of record from General Sessions Court, which does not ordinarily preserve a record of its proceedings, a record of the hearing before the school board may be preserved and transmitted to the Chancery Court and this record can become a part of the evidence before the Chancellor. We reiterate that a transcript of the board hearing is *not* required to be transmitted to the Chancery Court under the terms of this statute but we do not think any party is precluded from having such a record submitted to the Chancellor.

746 S.W.2d 176 (Tenn.1987)

The review afforded by Section 49–5–513 is not limited to a determination of whether the School Board acted within its jurisdiction, or acted arbitrarily, capriciously, or illegally. Rather, it is a trial *de novo*, in which the Chancellor must reduce his findings of fact and conclusions of law to writing and include them in the record. An appeal from a School Board determination is similar to an appeal from a decision of a General Sessions Court in that the Chancellor is required to reconsider and redetermine all the issues of fact, as well as law as if no such determination had been previously made. Hence, the Chancellor must substitute his judgment for that of the Board. The scope of review is not confined to whether the evidence considered by the School Board preponderates in its favor, and no presumption attaches to the School Board's determinations. *Van Hooser v. Warren County Bd. of Educ.,* 807 S.W.2d 230 (Tenn.1991).

■ The review of the factual findings of the Trial Court by this Court is *de novo* upon the record with a presumption of correctness unless the evidence preponderates otherwise. T.R.A.P. Rule 13(d). Upon trial *de novo*, this Court, like the Chancellor, must substitute its judgment for that of the Board.

—Plaintiff's First Issue—

Evidence Preponderates Against Findings

—Second Finding: Insubordination—

■ Insubordination is a defiance of authority, a mutiny. *Webster's Third New International Dictionary,* unabridged. It is disobedience to constituted authority; refusal to obey some order which a superior officer is entitled to give and have obeyed. *Black's Law Dictionary,* fourth edition.

■ The evidence of "orders" given to plaintiff is the testimony of the Principal and Assistant Principal. The Principal testified as follows:

A. And at that particular point in time my bookkeeper, who has a tendency to keep up with everything going on in the school, made me aware that students were staying over at Mr. Morris's house.

Q. What, if anything, did you do with that information with respect to conversations with Mr. Morris?

A. We talked about it.

Q. Tell us about that.

A. Well, the practice was obviously discouraged. My thinking would be that it is the type of thing that could cause problems. I think appearance-wise it did not look good. Professional, if you will. And it was more or less a concern of mine for him that he could get himself in trouble.

Q. Did you ever have occasion to have any other conversations of that nature with Mr. Morris?

A. No. Actually, after the original conversation, possibly conversations, two perhaps—I specifically remember one—I was unaware of the practice continuing.

The Assistant Principal testified:

Q. Now, during your years at Northeast as assistant principal, did you have occasion to discuss with Mr. Morris any situations involving students staying at his house?

A. Yes, I did.

Q. Tell us about that, if you would.

. . . .

A. I asked Mr. Morris to conduct school business at school and not at home.

No other evidence is found that plaintiff received any order from any superior that might be violated by the conduct with which he is charged.

The words used by the witnesses do not amount to an order. Without an order there can be no insubordination. Therefore, the evidence does not support the finding of insubordination by the Chancellor.

—First Finding: Unbecoming Conduct—

Since the Trial Judge disregarded the record of the administrative hearing, the recorded testimony in a separate case, and a deposition, and refused opportunity to secure the presence of Paul Smith to testify, all regarding the specifics of the alleged misconduct of plaintiff; the only evidence of misconduct considered by the Trial Judge was the testimony of plaintiff, himself, who admitted entertaining students at his home, but denied any impropriety.

It was error to decline to consider the administrative record of the Board. *Cooper v. Williamson County Bd. of Educ., supra.* This Court has considered said record.

The record before the Board and the testimony before the Chancellor is sufficient to support affirmance of the dismissal of plaintiff. Therefore, it is unnecessary to consider issues as to the exclusion of other evidence, which issues are pretermitted.

T.C.A. § 49–5–511 provides in pertinent part as follows:

**Dismissal or suspension of teachers generally.—** (a)(1) No teacher shall be dismissed or suspended except as provided in this part.

(2) The causes for which a teacher may be dismissed are as follows: incompetence, inefficiency, neglect of duty, unprofessional conduct and insubordination as defined in § 49–5–501.

. . . .

(4) When charges are made to the board of education against a teacher, charging the teacher with offenses which would justify dismissal of the teacher under the terms of this part, the charges shall be made in writing, specifically stating the offenses which are charged, and shall be signed by the party or parties making the charges.

The above quoted "Written Charges Against James Morris" contains a single charge of "conduct unbecoming to a member of the teaching profession" which is not mentioned in T.C.A. § 49–5–511, quoted above. However, the facts cited in support of the charge, if true, are sufficient to support charges of unprofessional conduct and insubordination.

As noted in the Director's December 19, 1990 letter to the plaintiff, the Board found plaintiff guilty of "the charges presented to

you by correspondence dated September 12, 1990." It may be assumed that the School Board found plaintiff guilty of the actions stated in the above quoted "Written Charges Against James Morris."

■ Since the statute, quoted above, does not include "conduct unbecoming a member of the teaching profession" as a ground for dismissal, the finding of the Chancellor to this effect does not support his judgment of dismissal.

Also, as stated above, the evidence does not support the statutory charge of insubordination mentioned in the judgment of the Chancellor.

■ However, the facts stated in section "a" and "b" of the "Written Charges Against James Morris," if true, do support a charge of unprofessional conduct, a statutory ground for dismissal; and, as stated in the quoted resolution of the Board, "any one" of said facts, if true, "were of such nature as to warrant" dismissal of plaintiff.

The preponderance of the evidence in this record shows the plaintiff to be guilty of behavior with students as described in paragraphs "a" and "b" of the charges.

Plaintiff admitted that a student, Paul Smith, spent the night in bed with him at his home on three occasions in November and December; that Paul Smith spent the night in bed with him on a trip to Kansas City; that he and Paul Smith had exchanged "back rubs" in bed at his (plaintiff's) home; and that, thereafter, Paul Smith became a problem at school, consisting of disrespect and bad language.

Plaintiff admitted that two other students had spent the night in bed with him at his home.

Paul Smith testified that when he spent the night with plaintiff, he (plaintiff) rubbed Smith's back and "privates" on several occasions; after which Smith refused to go to plaintiff's house and that, thereafter, plaintiff became very critical of his band performance and reported him for misbehavior.

In *Anderson v. Carter*, Tenn.App.1974, 512 S.W.2d 297, a funeral director's license revocation case, this Court said:

"Professional Conduct" of a funeral director or funeral home would certainly include efficiency, accuracy, and fidelity in the handling of funds received on behalf of a customer. Therefore failure to show these virtues would be "unprofessional conduct."

Black's Law Dictionary, Fourth Edition, page 1707, contains the following definition:

"UNPROFESSIONAL CONDUCT. That which is by general opinion considered to be grossly unprofessional because immoral or dishonorable. *State Board of Dental Examiners v. Savelle*, 90 Colo. 177, 8 P.2d 693, 697. That which violates ethical code of profession or such conduct which is unbecoming member of profession in good standing. *People v. Gorman*, 346 Ill. 432, 178 N.E. 880, 885. It involves breach of duty which professional ethics enjoin. *People v. Johnson*, 344 Ill. 132, 176 N.E. 278, 282."

See also authorities annotated under the title, "Unprofessional Conduct." 43A Words and Phrases, 83.

512 S.W.2d p. 305.

In 68 Am.Jur.2d Schools, § 161 is found the following:

**Unprofessional conduct** *Definition:* "Unprofessional conduct" refers to conduct that violates the rules or the ethical code of a profession or that is unbecoming a member of a profession in good standing, or which indicates a teacher's unfitness to teach. So construed, a statutory provision authorizing dismissal of a permanent employee for unprofessional conduct is not rendered void for vagueness.

A determination of whether a teacher is guilty of unprofessional conduct is largely discretionary, and the effect of the conduct on the school to which the teacher belongs is an important element in determining whether it constitutes unprofessional conduct. However, a teacher's acts need not be committed in the presence of pupils in order to be classified as unprofessional.

The phrase, "unprofessional conduct" is to be construed according to its common and approved usage having regard to the context in which it is used. *Bd. of Educ. of City of L.A. v. Swan*, Cal.1953, 261 P.2d 261, 41 Cal.2d, 546.

Unprofessional conduct means conduct indicating an unfitness to teach. *Morrison v. State Board of Education*, 1 Cal.3rd 214, 461 P.2d 375, 82 Cal.Rptr. 175 (1969).

In the present case, plaintiff has admitted such intimacy with Paul Smith and that thereafter, Smith became a disciplinary problem. Such intimacy is naturally calculated to compromise tutorial authority and this record illustrates its detrimental effect.

A teacher who invites or permits a student or students to sleep with him and engage in intimate activity, compromises his ability to teach.

Based upon the evidence stated, this Court finds the plaintiff guilty of unprofessional conduct and affirms his dismissal. The judgment of the Trial Court is modified to affirm the dismissal of plaintiff. As modified, the judgment is affirmed. Costs of this appeal are taxed against the plaintiff. The cause is remanded to the Trial Court for entry of the modified judgment, for collection of costs accrued in that Court and for any other necessary proceedings.

Modified, Affirmed and Remanded.

LEWIS and CANTRELL, JJ., concur.