**Mary Linda WINKLER,**

v.

**TIPTON COUNTY BOARD OF EDUCATION, et al.**

Court of Appeals of Tennessee, Western Section, at Jackson.

July 16, 2001.

Permission to Appeal Denied by Supreme Court Dec. 10, 2001.

J. Houston Gordon, Covington, TN, for appellant, Mary Linda Winkler.

Valerie Barnes Speakman, Cordova, TN, and Walker Tipton, Covington, TN, for appellees, Tipton County Board of Education, et al.

## OPINION

GLENN, Sp.J., delivered the opinion of the court, in which CRAWFORD, P.J., W.S., and HIGHERS, J., joined.

The petitioner, a tenured teacher employed by the Tipton County Board of Education, was charged with two counts of unprofessional conduct arising from a single episode. Following a hearing before the Board, she was suspended for the remainder of the school year, and timely appealed to the chancery court. The petitioner raised, as issues on appeal, that the chancery court erred: (1) in upholding the decision of the school board to suspend the petitioner; (2) in not allowing the petitioner to combine in a single action her appeal of the suspension and a 42 U.S.C. § 1983 complaint; and (3) in not allowing additional discovery for her discrimination claim. Based upon our review, we conclude that the chancery court erred in affirming the suspension of the petitioner and remand with instructions that the petitioner be reinstated. In all other respects, we affirm the judgment of the chancery court.

## FACTS

The petitioner, Mary Linda Winkler, was a tenured teacher with the Tipton County Board of Education, teaching the eighth grade at the Crestview Middle School in Tipton County. On January 13, 1998, she was suspended pending an investigation as to whether she had mishandled school funds. Subsequently, two charges were presented against her. The first charge was that:

> Mrs. Winkler is guilty of unprofessional conduct/conduct unbecoming a member of the teaching profession in that on or about December 19, 1997, she received in her capacity as a teacher at Crestview Middle School a check in the amount of $675.00 payable to the Crestview 8th Grade Linda Winkler Sponsor, and converted the same to her own use by depositing the same in her personal bank account with Security Bank, Dyersburg, Tennessee.

The second charge was that:

> Mrs. Winkler is guilty of unprofessional conduct/conduct unbecoming a member of the teaching profession and insubordination in that on or about December 19, 1997, she willfully violated the "Tennessee Internal School Financial Management Manual" adopted by the Board by taking home funds belonging to the school, by not accounting for said funds to the school secretary and by not depositing funds to the credit of the school within three days.

At the time of the hearing before the Board, the petitioner had been an instructor at Crestview Middle School for four years. For both the 1996–97 and the 1997–98 school years, she had been assigned to handle the ring sales for the Crestview eighth grade class. Balfour, the

seller of the rings, rebated a portion of the proceeds back to the school, and the rebate from the preceding school year's ring sales was deposited into the general fund of the school, which benefitted the entire student body and not just the eighth grade class whose ring purchases had generated the rebate. According to the petitioner's testimony, she did not learn until 1997 that the ring sales were a fund-raiser, with each child paying an extra $5.00 per ring, which was then rebated back to the school.

The Crestview eighth grade teachers discussed how the rebated funds could best be used, and the plan was to purchase instructional videos. The eighth grade teachers reviewed a booklet, which the petitioner had obtained, and selected videos to be purchased.

The petitioner asked the Balfour salesman if her name could be added to the rebate check, and he said that it could. The check was made payable to "Crestview 8th Grade Linda Winkler Sponsor." She testified that she had asked that her name be added to the check because she had heard that previously the eighth grade had "never gotten the funds that were supposed to be for them to use":

And I had it put on there Linda Winkler, Eighth Grade Sponsor, not just Linda Winkler. It was for the eighth grade. And we wanted to maybe make a statement, make sure that the eighth grade had the ability to at least say what they wanted.

The petitioner received the check on December 19, 1997, the last day of school before the Christmas holidays began. At the time, she was dealing with family problems of her mother and her adult daughter, both of whom lived in other states.

The petitioner testified that she put the check into her pocket and forgot about it until she was at home later that day. Also, according to her testimony, she mis-placed it at her home but found it again with the day's mail. Her husband advised that she should put the check into a separate account at the bank, and they opened a new account at their bank, this check being the only deposit made into it. The check was endorsed "Linda Winkler, 8th Grade Sponsor, Crestview Middle School."

She returned to school on January 5, 1998, to turn in her grades and on January 6, was asked by the principal about the ring money. She at first said that she had received the check in the mail but later corrected this statement. She obtained the proceeds, and a small amount of interest from her bank, and delivered this money to the school, along with the order form for the videotapes which the eighth grade teachers had selected.

Following the presentation of proof, although the Board did not discuss or vote as to whether the two charges against the petitioner had been proven, its members did discuss the resolution of the charges:

MR. CLARK: Well, I'm really wrestling with this. This is not a court of law the way I understand it. I mean, we are the board, I mean, as a whole.

MR. EUBANK: Yes, sir.

MR. CLARK: You know, this is just me thinking out loud. You know, the fact that she took the money, she deposited it in an account in her name, I don't think anybody—and no one has denied that. What I am wrestling with in my mind is with all the other—Well, with all the testimony I've heard I just don't know that I am ready to vote to dismiss someone over what I've heard today. I'm going to put on the floor a motion that we suspend, since she has been off since the 13th, for the remainder of the school year without pay.

MR. EUBANK: Could I ask for a clarification on the motion?

MR. CLARK: Okay.

MR. EUBANK: That she's suspended for the remainder, well, beginning at the time that she was suspended?

MR. CLARK: Right, right.

MR. EUBANK: And that continues on—

MR. CLARK: Through the school year.

MR. EUBANK: Until the end of the school year. Now, would she been [sic] reinstated for the next school year? Is that in this notion [sic]?

MR. CLARK: Yes.

MS. TALLEY: I'll second.

MR. GORDON: I'm sorry. I didn't hear you.

MS. TALLEY: I second it.

MR. GORDON: Okay.

MR. EUBANK: Okay. We've got a motion on the floor that Mrs. Winkler be suspended without pay beginning from the time that the board originally suspended her without pay and that to continue until the end of the school year, and that she be reinstated to her teaching position the coming school year, and we have a second from Ms. Talley. Now we're in discussion. Has anybody got anything you want to say?

MR. CLARK: Well, I'm going to discuss my own motion, I guess. Will she have the right to appeal this?

MR. EUBANK: Yes, sir. Anything we do they've got a right to appeal.

MR. CLARK: Okay.

MR. EUBANK: My only problem with the whole thing is, as Mr. Gordon has alluded to a time or two, are we setting a precedent here? Are we opening the flood gates that every time somebody mishandles some money, how are we going to determine whether they did it intentionally or not intentionally? Are they going to take a haphazard view of handling our funds? We've got laws

to—that set that up. I'm just thinking it needs to be debated.

MR. CLARK: Well, my justification, you know, in my motion is that, you know, she's looking at a semester without pay, which, you know, in my mind is not a light sentence at all. I mean, I would hate to be, you know, in my position from my job be suspended without pay for a matter of four or five months, whatever it comes down to. I mean, I understand your point completely.

MR. EUBANK: I'm just raising a question.

MR. CLARK: If we're setting a precedent, I don't think it's too light under these circumstances. I mean, that's my opinion for whatever it's worth.

MS. GRIFFIN: I mean, we're not ignoring the fact.

MR. CLARK: You know, in my mind the biggest thing she's guilty of in this case, and she would probably agree after the fact, is pour [sic] judgment.

MR. EUBANK: Yeah. Ms. Talley, have you got anything to add to that?

MS. TALLEY: No.

MR. EUBANK: Mr. Bethel?

MR. BETHEL: To me it seems like to me for two individuals with the education that they have to pull a blunder like this, I can't understand it. To me it's just not what you would expect. And as far as talking about stresses and what you have, the attorney mentioned the fact, if you had been caught when you ran the stop sign, they wouldn't have excluded you from being prosecuted, right? So ignorance of the law excuses no one according to what I've heard. And they don't make allowances for how our families or what-not are suffering. Motion on the floor.

MR. EUBANK: Okay. I think I need to have a roll call vote on the motion. Mr. Clark?

MR. CLARK: Aye.

MR. EUBANK: Ms. Talley?

MS. TALLEY: Aye.

MR. EUBANK: Ms. Griffin?

MS. GRIFFIN: Aye.

MR. EUBANK: Mr. Bethel?

MR. BETHEL: Aye.

MR. EUBANK: Eubank aye. The motion carries.

MR. GORDON: I would assume that there will be some sort of official notice of this decision coming through you, Ms. Speakman?

MS. SPEAKMAN: Yes.

MR. GORDON: And my time starts running then?

MS. SPEAKMAN: Yes, sir.

MR. GORDON: Thank you all for listening.

The text of the notice letter which the petitioner received following the hearing stated as follows:

The purpose of this letter is to confirm the Tipton County School Board's decision regarding your dismissal hearing. The Board has determined that your actions pertaining to the charges presented to the Board and attached hereto were improper; however, rather than being terminated, you will continue your unpaid suspension for the remainder of the 1997–98 school year. You may resume your position with pay beginning in the 1998–99 school year.

### ANALYSIS

The statute pursuant to which the petitioner was charged, and, ultimately, suspended for a semester is Tennessee Code Annotated Section 49–5–511 (1996), which provides in pertinent part as follows:

**Dismissal or suspension of teachers generally.** (a)(1) No teacher shall be dismissed or suspended except as provided in this part.

(2) The causes for which a teacher may be dismissed are as follows: incompetence, inefficiency, neglect of duty, unprofessional conduct and insubordination as defined in § 49–5–501.

(3) A superintendent may suspend a teacher at any time that may seem necessary, pending investigation or final disposition of a case before the board or an appeal. If vindicated or reinstated, the teacher shall be paid the full salary for the period during which the teacher was suspended.

(4) When charges are made to the board of education against a teacher, charging the teacher with offenses which would justify dismissal of the teacher under the terms of this part, the charges shall be made in writing, specifically stating the offenses which are charged, and shall be signed by the party or parties making the charges.

(5) If, in the opinion of the board, charges are of such nature as to warrant the dismissal of the teacher, the superintendent shall give the teacher a written notice of this decision, together with a copy of the charges, and a copy of a form which shall be provided by the commissioner of education advising the teacher as to the teacher's legal duties, rights and recourse under the terms of this part.

(b)(1) When it becomes necessary to reduce the number of teaching positions or nonlicensed positions in the system because of a decrease in enrollment or for other good reasons, the board shall be empowered to dismiss such teachers or nonlicensed employees as may be necessary.

(2) The board shall give the teacher or nonlicensed employee written notice of dismissal explaining fully the circumstances or conditions making the dismissal necessary.

The responsibility of the Board, following the hearing, is set out in Tennessee Code Annotated Section 49–5–512(a)(9) (1996):

(a) A teacher, having received notice of charges pursuant to § 49–5–511, may, within thirty (30) days after receipt of notice, demand a hearing before the board, as follows:

. . . .

(9) The board shall within ten (10) days decide what disposition to make of the case and shall immediately thereafter give the teacher written notice of its findings and decision.

## Issue I. Whether the Trial Court Erred in Affirming the Board's Action [1]

The standard of review which we apply in this matter was explained in *Paul E. Wallace v. Rhonda Mitchell*, No. W1999–01487–COA–R3–CV, 2000 WL 1520227, 2000 Tenn.App. LEXIS 558, at *6–7 (Tenn. Ct.App. Aug.16, 2000):

Judicial review of a teacher dismissal case pursuant to T.C.A. § 49–5–513 requires the chancery court to review the transcript of the hearing before the board in order to determine whether there was any material evidence to support the board's decision. If there is, it is the responsibility of the trial court to affirm. On the question of whether the Board acted arbitrarily, capriciously or illegally, the trial court may hear new evidence and must make independent findings in this regard. Our scope of review on appeal from chancery court is

no greater than that court's review of the Board decision. *See Goodwin v. Metropolitan Board of Health*, 656 S.W.2d 383, 387 (Tenn.Ct.App.1983).

The petitioner argues that the Board imposed punishment without first determining whether either of the charges had been proven. Thus, according to the petitioner's argument, there were no Board "findings and decision" for the chancery court to consider. Additionally, the petitioner claims that the trial court erred in affirming the Board's decision because there was no material evidence presented which supported the Board's decision and that the court should have granted her petition to dismiss the charges. The Board argues that "with no disputed material fact being before the Board, the only question before the Board was what, if any, penalty was appropriate to take against Petitioner." According to the Board's argument, its conclusions were sufficient, for "the record need not be burdened with detailed findings of fact."

In resolving this issue, we must determine whether the "findings and decision" of a board refer to the dispensing of punishment, as occurred here and which the petitioner claims was all that the Board decided, or whether the Board's action was sufficient to satisfy its statutory requirements, as it asserts.

Both charges allege that the petitioner was guilty of "unprofessional conduct," which has been defined as:

"Unprofessional conduct" has been defined as "conduct that violates the rules or the ethical code of a profession or that is unbecoming a member of a profession in good standing, or which indicates a teacher's unfitness to teach."

---

1. In her appeal, the petitioner presented three issues regarding the action of the Board. We have combined these into a single issue.

*Morris v. Clarksville–Montgomery County Consol. Bd. of Educ.*, 867 S.W.2d 324, 329 (Tenn.Ct.App.1993) (citing 68 Am.Jur.2d *Schools* § 161 (1993)).

*Baltrip v. Norris*, 23 S.W.3d 336, 340 (Tenn.Ct.App.), *perm. to appeal denied* (Tenn.2000).[2]

■ It is difficult to reconcile this definition of the charges against the petitioner with the discussion of the Board members, following presentation of proof at the hearing, in attempting to determine how they found as to each of these charges. At least two of the Board members believed apparently that the petitioner was guilty of poor judgment which may, or may not, equate to "unprofessional conduct," with which she was charged. While it can be argued that a finding of guilt necessarily is inherent in imposing punishment, the comment of one Board member, and assent of another, that the petitioner was guilty of poor judgment, seem to belie such a conclusion. Additionally, although the two charges against the petitioner were based upon the same conduct, the fact remains that there were two charges. Thus, without a finding of guilt, it is impossible to determine whether the Board found the petitioner guilty of either or both charges or whether, instead, her misdeed was the exercise of poor judgment, which, although it can be descriptive of other behavior, is not an enumerated basis for suspension or dismissal of a tenured teacher. Tenn.Code Ann. § 49–5–511(a)(2). We simply cannot equate comments, as here, that the petitioner was guilty of poor judgment, with a subsequent suspension, as satisfying the Board's responsibility to make findings

and reach a decision, giving written notice of these to the teacher within ten days. Tenn.Code Ann. § 49–5–512(a)(9). Further, without findings, the task of the reviewing court is made more difficult, for it must determine whether the evidence was sufficient to find the petitioner guilty of any of the charges even though the Board, itself, may not have so believed. Accordingly, we conclude that the comments of the Board at the conclusion of the proof, and its subsequent suspension of the petitioner, did not satisfy the requirement imposed by Tennessee Code Annotated Section 49–5–512(a)(9) that the Board make known its "findings and decision." Where, as here, no determination was made as to whether the charges had been proven, and Board comments appeared to be that at least some of the members believed they had not, there were no Board "findings and decision" for the chancery court to weigh.

Accordingly, we conclude that the chancery court erred in affirming the suspension of the petitioner. Thus, the judgment of the chancery court is reversed, and the matter is remanded with instruction that the suspension be nullified and the petitioner reinstated as if it had not occurred.

**Issue II. Whether the Trial Judge Erred in Ruling that Petitioner Could Not Pursue In the Same Action Her Original 42 U.S.C. § 1983 and Tenn.Code Ann. § 4–21–101 Claims**

The trial court did not permit the petitioner to consolidate into a single action her action for damages pursuant to 42 U.S.C. § 1983 with the appeal pursuant to

---

**2.** The Board cites *Baltrip* as authority for its contention that a school board need not "even verbalize or discuss the motivating reason for its vote." *Baltrip* had pled guilty to an assault upon a minor female student, and that was the basis for the charge against him, which resulted in his termination. The issue

does not appear to have been raised in *Baltrip* as to whether the actions of the Board following the presentation of evidence at the hearing satisfied its obligation to render its "findings and decision." Thus, the result in *Baltrip* is not dispositive of this issue.

Tennessee Code Annotated Section 49–5–513, and this has been assigned as error by the petitioner.

Our standard of review for the granting of summary judgment is as follows:

> The standards governing an appellate court's review of a motion for summary judgment are well settled. Since our inquiry involves purely a question of law, no presumption of correctness attaches to the lower court's judgment, and our task is confined to reviewing the record to determine whether the requirements of Tenn.R.Civ.P. 56 have been met. *See Hunter v. Brown,* 955 S.W.2d 49, 50–51 (Tenn.1997); *Cowden v. Sovran Bank/Central South,* 816 S.W.2d 741, 744 (Tenn.1991). Tennessee Rule of Civil Procedure 56.04 provides that summary judgment is appropriate where: (1) there is no genuine issue with regard to the material facts relevant to the claim or defense contained in the motion, *see Byrd v. Hall,* 847 S.W.2d 208, 210 (Tenn.1993); and (2) the moving party is entitled to a judgment as a matter of law on the undisputed facts. *See Anderson v. Standard Register Co.,* 857 S.W.2d 555, 559 (Tenn.1993). The moving party has the burden of proving that its motion satisfies these requirements. *See Downen v. Allstate Ins. Co.,* 811 S.W.2d 523, 524 (Tenn.1991). When the party seeking summary judgment makes a properly supported motion, the burden shifts to the nonmoving party to set forth specific facts establishing the existence of disputed, material facts which must be resolved by the trier of fact. *See Byrd v. Hall,* 847 S.W.2d at 215.

*Staples v. CBL & Associates, Inc.,* 15 S.W.3d 83, 88 (Tenn.2000).

■ We find to be persuasive the following reasoning and language from *Goodwin v. Metropolitan Board of Health,* 656 S.W.2d 383, 386 (Tenn.Ct.App.1983):

> Before considering the first issue, we wish to heartily condemn that which appears to us to be a growing practice, i.e., the joinder of an appeal with an original action and the simultaneous consideration of both at the trial level. This Court is of the firm opinion that such procedure is inimical to a proper review in the lower certiorari Court and creates even greater difficulties in the Court of Appeals. The necessity of a separation of appellate review of a matter and trial of another matter ought to be self evident. In the lower Court one is reviewed under appropriate Appellate rules and the other is tried under trial rules. In this Court our scope of review is dependent upon the nature of a proceeding. In this case one matter would be limited by rules of certiorari review and the other would be reviewed under 13(d), Tennessee Rules of Appellate Procedure. Like water and oil, the two will not mix.

Thus, there are both legal and practical reasons why such a joinder is improper. Accordingly, we conclude that the trial court correctly granted summary judgment as to the petitioner's claim based upon an alleged violation of 42 U.S.C. § 1983.

**Issue III. Whether the Trial Court Erred in Not Allowing Additional Discovery Prior to the Chancery Court Appeal of the Board's Ruling**

The petitioner claims that the trial court erred in not allowing additional discovery prior to the trial of her appeal to the chancery court, citing Tennessee Code Annotated Section 49–5–513(g):

> The cause shall stand for trial and shall be heard and determined at the earliest practical date, as one having precedence over other litigation, except suits involv-

ing state, county or municipal revenue. The review of the court shall be limited to the written record of the hearing before the board and any evidence or exhibits submitted at such hearing. Additional evidence or testimony shall not be admitted except as to establish arbitrary or capricious action or violation of statutory or constitutional rights by the board.

In view of our concluding that the trial court erred in affirming the ruling of the Board, this issue is now pretermitted, and we need not give an advisory opinion as to whether the trial court was correct in its discovery rulings.

### CONCLUSION

Based upon the foregoing authorities and reasoning, we conclude that the suspension of the petitioner was improper and that the trial court erred in upholding the action of the Board. Accordingly, we remand the matter with instructions that the suspension be nullified and the petitioner restored as if it had not occurred. As to the other assignments of error, we affirm the action of the trial court.

Costs of the appeal are assessed one-half against the petitioner, Mary Linda Winkler, and one-half against the respondents, Tipton County Board of Education, et al.