IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
January 26, 2021 Session

## MATTHEW KEITH HUBBARD v. CLAIBORNE COUNTY BOARD OF EDUCATION ET AL.

**Appeal from the Chancery Court for Claiborne County**
**No. 19336    Elizabeth C. Asbury, Chancellor**

_____

**No. E2020-00517-COA-R3-CV**

_____

A tenured teacher appealed his dismissal for unprofessional conduct and insubordination. He contended that the decision of the Board of Education lacked sufficient evidentiary support. The teacher also contended that the decision was arbitrary and capricious and in violation of his constitutional and statutory rights. The trial court affirmed the Board's decision. Upon review, we conclude that the teacher received pre-termination notice of the charges and evidence against him. And the Board complied with the procedural framework in the Tenure Act. *See* Tenn. Code Ann. § 49-5-512 (2020). The evidence does not preponderate against the trial court's findings that the teacher was guilty of unprofessional conduct and insubordination. We further conclude that the teacher failed to establish that the Board's decision was arbitrary or in violation of statutory or constitutional rights. So we affirm.

 **Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

W. NEAL MCBRAYER, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and KRISTI M. DAVIS, J., joined.

Richard L. Colbert and C. Joseph Hubbard, Nashville, Tennessee, for the appellant, Matthew Keith Hubbard.

Janet Strevel Hayes and Chris W. McCarty, Knoxville, Tennessee, for the appellees, Claiborne County Board of Education, Joseph A. Miller, Shane Bunch, Terry Keck, Neta Munsey, Justin Cosby, Linda Fultz, Shannon England, and Wade Breeding.

**OPINION**

**I.**

**A.**

For almost twenty years, Matthew Keith Hubbard taught special needs children in the Claiborne County school system. He obtained permanent tenure in 2004. By all accounts, his classroom performance has been exemplary. But his behavior outside the classroom ultimately led to his dismissal.

On April 16, 2018, Mr. Hubbard was arrested for driving under the influence. He pled guilty, and his driver's license was revoked for one year. He was also ordered to pay a fine, spend 48 hours in jail, and attend an alcohol awareness program.

Driving while intoxicated can be grounds for dismissal of a tenured teacher. Mr. Hubbard met with the Director of Schools to discuss the consequences of his behavior. Although disappointed with Mr. Hubbard's unprofessional conduct, the Director imposed a three-day suspension, without pay, rather than dismissal. As the Director informed Mr. Hubbard at the time,

> I . . . will not and cannot ignore your many years of valuable service to Claiborne County Schools as a special education teacher. It is that valuable service and your ability with our special education students which have caused me to decide against your dismissal.

But the Director warned Mr. Hubbard that future conduct issues could lead to further discipline, including dismissal.

A few months later, Mr. Hubbard was arrested for driving on a revoked license. While investigating the arrest, the Director learned that Mr. Hubbard had threatened another teacher. This time, the Director asked the Board of Education to approve dismissal charges against Mr. Hubbard for unprofessional conduct and insubordination. After receiving the Board's approval, the Director notified Mr. Hubbard of the dismissal charges. In response, Mr. Hubbard requested a full and complete hearing before an impartial hearing officer.

**B.**

The hearing officer heard testimony from multiple witnesses, including the Director of Schools; the Assistant Director; Mr. Hubbard; Mr. Hubbard's wife, Pam Hubbard; and several teachers and administrators in the Claiborne County school system. Mr. Hubbard's

2

co-workers and principal attested to his outstanding performance in the classroom. In their interactions with him, Mr. Hubbard always displayed a calm, professional demeanor.

As the Director explained, he considered pursuing dismissal charges against Mr. Hubbard after his April 2018 conviction for driving under the influence. But he decided to give the teacher another chance in light of his stellar classroom performance. Even so, he warned Mr. Hubbard not to engage in any further unprofessional conduct. Then, less than six months later, Mr. Hubbard was arrested again.

In October of that year, one of Mr. Hubbard's sons had a late basketball practice at a Claiborne County middle school. Midway through practice, Mrs. Hubbard demanded to speak with the head basketball coach, Glen Smith. After speaking with Mrs. Hubbard, the visibly shaken coach told one of his assistants, Jason Miracle, that Mr. Hubbard was en route to pick up his son. And he relayed that Mr. Hubbard was believed to be intoxicated and possibly violent.

Coach Miracle promptly locked all the gym doors and called 9-1-1. The police questioned both Coach Miracle and Mrs. Hubbard. When Mr. Hubbard arrived, the police were still on the scene. He drove slowly through the parking lot without stopping. An officer arrested Mr. Hubbard on his way home for driving on a revoked license. He was not charged with an alcohol-related offense.

When asked about his October arrest, Mr. Hubbard explained that, after his license was revoked in April, he obtained a restricted license. Unbeknownst to him, the restricted license was no longer valid. Still, the new charges were dismissed after he obtained another restricted license and installed an ignition interlock device.

While investigating the October incident, the Director met with Mrs. Hubbard, who was also a teacher in the Claiborne County school system. She told the Director of rumors of an affair between Coach Smith and herself, rumors her husband apparently believed to be true. The month prior, Mr. Hubbard had sent his wife a number of disturbing text messages about Coach Smith. She shared a few examples:

I've texted Glen [Smith] twice now to inform him that I'm aware of the situation and going to settle things with him. I'll beat the hell out of him.

I know exactly where he lives. I'll be waiting.

I know where he lives and works. I'm going to confront him.

Upon further questioning from the Director, Mrs. Hubbard revealed that her husband could become angry when drinking. She had seen him punch walls and other

3

objects.[1]  And he had previously confronted another teacher about an alleged affair.  She suspected that her husband had been drinking on October 4.  So, when she learned he was on his way to the gym, she decided to warn Coach Smith.

The Director viewed Mr. Hubbard's threats as more unprofessional conduct and a clear violation of his previous directive.  Threats directed at a co-worker presented a safety issue for the school system.

The Assistant Director confirmed that the Director told Mr. Hubbard to avoid further unprofessional conduct.  As he recalled, Mr. Hubbard was told "that this kind of behavior wouldn't be tolerated and that the next occurrence could lead up to dismissal."  Mr. Hubbard acknowledged that he was given a verbal directive.  But he claimed that the Director merely warned him to avoid future arrests and similar issues.

The Assistant Director also disclosed that Mr. Hubbard had received a verbal reprimand in 2014 after a previous arrest for driving under the influence.[2]  At that time, the former director of schools warned Mr. Hubbard about the potential consequences of further unprofessional conduct.  Mr. Hubbard's counsel objected to this testimony as outside the scope of the charges.  The hearing officer ruled that he would consider the previous incident only as evidence that Mr. Hubbard was on notice that his behavior outside the classroom could be grounds for discipline.

For his part, Mr. Hubbard blamed his wife and Coach Smith for the unnecessary alarm at the gym.  He had not been drinking.  He only went to the gym to pick up his son from practice.  When he saw his wife in the parking lot, he "was satisfied that [his] son was being picked up."  So he headed home.

But he confessed that he was a protective and jealous husband.  He had previously confronted another teacher about a suspected affair.  In his words, "when I get emotional, I do and say things that are not quite appropriate."

Mr. Hubbard explained that he became convinced that "something was going on" between his wife and Coach Smith.  In September, he sent approximately five confrontational text messages to Coach Smith.  Among those messages was this one: "I am aware of the situation.  I'm going to settle things.  I will beat the hell out of you."  Mr. Hubbard admitted that threatening a co-worker was unprofessional.  But he viewed his text messages as "emotional outbursts," not threats.  Still, he understood the Director's

---

[1] Mr. Hubbard acknowledged that he had thrown a few punches but denied having an anger management problem.

[2] The 2014 charge was later reduced to reckless driving.

4

concerns. He regretted his choice of words. And he acknowledged that his behavior was inappropriate. But he never intended to harm Coach Smith.

Mrs. Hubbard agreed that her husband had never hurt anyone. She described him as a good man when sober. Mr. Hubbard conceded that he had a drinking problem. But, with the help of his wife's physician, he was trying to stop.

### C.

The hearing officer concluded that Mr. Hubbard received adequate notice of the charges. The officer also determined that Mr. Hubbard's threats of violence against a colleague constituted both unprofessional conduct and insubordination. And dismissal was appropriate under these facts and circumstances.

Mr. Hubbard appealed to the Board of Education. By a five-to-one vote, the Board approved the hearing officer's decision. So Mr. Hubbard sought further review in chancery court.

In his chancery court petition, Mr. Hubbard alleged that the evidence did not support the Board's decision. And he asserted that the Board had violated his statutory and constitutional rights by relying on evidence beyond the scope of the notice of charges. Finally, he claimed that the Board's approval of the hearing officer's decision was arbitrary and capricious.

The chancery court ruled in the Board's favor. The court found no evidence that the proceedings before the Board or the Board's decision was arbitrary and capricious or in violation of Mr. Hubbard's constitutional or statutory rights. Mr. Hubbard was adequately apprised of the charges against him. And the evidence supported both grounds for dismissal. The court also determined that dismissal was the appropriate remedy.

### II.

The Tenure Act is designed "to protect school teachers from arbitrary demotions and dismissals." *Cooper v. Williamson Cty. Bd. of Educ.*, 746 S.W.2d 176, 179 (Tenn. 1987) (citation omitted). The Act delineates five exclusive grounds for suspension or dismissal, including unprofessional conduct and insubordination. Tenn. Code Ann. § 49-5-511(a)(2) (2020).

The Act also mandates a procedural framework for teacher discipline. *Lemon v. Williamson Cty. Sch.*, 618 S.W.3d 1, 16 (Tenn. 2021). The first step is the presentation of written charges to the Board of Education, "specifically stating the offenses that are charged." Tenn. Code Ann. § 49-5-511(a)(4). If the Board approves the charges, the

director of schools must notify the teacher and provide the teacher with a copy of the charges and a notice of legal rights. *Id.* § 49-5-511(a)(5).

The teacher may demand a "full and complete hearing on the charges before an impartial hearing officer." *Id.* § 49-5-512(a) (2020). The Board has the burden of proof at the hearing. *See Cooper*, 746 S.W.2d at 182. After the hearing, the hearing officer must issue "written findings of fact, conclusions of law and a concise and explicit statement of the outcome of the decision." Tenn. Code Ann. § 49-5-512(a)(9).

If the teacher is dissatisfied with the hearing officer's decision, the teacher must first appeal to the Board. *Id.* § 49-5-512(c)(1). No new evidence may be introduced. *Id.* § 49-5-512(c)(3). But the teacher may appear before the Board and explain why the hearing officer's decision should be modified or reversed. *Id.* The Board may send the record back for additional evidence, revise the penalty, or either sustain or reverse the decision. *Id.*

Both parties then have the right to seek review of the Board's decision in chancery court. *Id.* § 49-5-512(c)(4). Review in chancery court is "de novo on the record of the hearing." *Id.* This standard of review does not permit the parties to submit new evidence on the merits of the charges. *Emory v. Memphis City Sch. Bd. of Educ.*, 514 S.W.3d 129, 142 (Tenn. 2017). The court's review is "limited to the written record of the hearing before the board and any evidence or exhibits submitted at the hearing." Tenn. Code Ann. § 49-5-513(g) (2020). New evidence may be submitted at this juncture only "to establish arbitrary or capricious action or violation of statutory or constitutional rights by the board." *Id.*

In chancery court, no presumption of correctness attaches to the Board's decision. *Emory*, 514 S.W.3d at 141. The court makes "a fresh and independent determination of both the facts and the law." *Finney v. Franklin Special Sch. Dist. Bd. of Educ.*, 576 S.W.3d 663, 677 (Tenn. Ct. App. 2018). But the burden of proving the charges remains with the Board. *Saunders v. Anderson*, 746 S.W.2d 185, 189 (Tenn. 1987). The teacher has the burden of proving any allegations that the Board acted arbitrarily or in violation of the teacher's rights. *Crosby v. Holt*, 320 S.W.3d 805, 817 (Tenn. Ct. App. 2009).

On appeal, we apply our familiar standard of review for appeals after a bench trial. *Emory*, 514 S.W.3d at 142. We presume that the trial court's factual findings are correct unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d). We review questions of law de novo, with no presumption of correctness. *Emory*, 514 S.W.3d at 142.

A.

A tenured teacher has a constitutional right to due process. *Thompson v. Memphis City Sch. Bd. of Educ.*, 395 S.W.3d 616, 627 (Tenn. 2012). "At a minimum," the teacher is entitled "to pre-termination notice of the charges . . . , an explanation of the employer's

6

evidence, and an opportunity to present [his or] her side of the story to the employer." *Id.* The notice should "fairly apprise the teacher of the charge[s] against him and enable him to prepare his defense in advance of the hearing." *Turk v. Franklin Special Sch. Dist.*, 640 S.W.2d 218, 220 (Tenn. 1982) (citation omitted).

Mr. Hubbard complains that his 2014 arrest was not included in the notice of charges. Asserting that this appeal is "on all fours" with our supreme court's decision in *Turk v. Franklin Special School District*, he argues that the Board violated his rights by relying on evidence beyond the scope of the charges. *See id.* Mr. Hubbard's reliance on the *Turk* decision is misplaced.

In *Turk*, the charging document informed the teacher that she was charged with unprofessional conduct based on her recent conviction for driving under the influence. *Id.* at 219. But, at the hearing, the Board also considered evidence of a prior automobile accident, as well as, the teacher's absentee record and drinking habits. *Id.* at 219-20. The previous accident factored heavily in the Board's decision to dismiss the teacher. *Id.* at 220. Our supreme court held that "it was fundamental error" for the Board to base its dismissal decision on extraneous matters "not specified in writing prior to the hearing." *Id.* And the recent conviction, standing alone, was insufficient to support the dismissal decision. *Id.* at 220-21.[3]

We face notably different facts. The notice of charges fully apprised Mr. Hubbard of the charges and evidence against him. The Director charged Mr. Hubbard with unprofessional conduct and insubordination. The notice specified that these charges were based on his April 2018 conviction, the warning to avoid future issues, his subsequent arrest for driving on a revoked license, and his threats directed at a co-worker. While the notice did not mention his 2014 arrest, the Board did not base its decision on that previous arrest. The hearing officer found Mr. Hubbard guilty of both charges based on his threats to a co-worker. And the Board upheld that decision. The trial court independently came to the same conclusion. The 2014 arrest was considered, if at all, as evidence that Mr. Hubbard knew the possible consequences of unprofessional behavior outside the classroom.

B.

1. Unprofessional Conduct

"Conduct unbecoming to a member of the teaching profession" includes immorality, dishonesty, felony convictions, ethical violations, and improper use of intoxicants. Tenn.

---

[3] Our supreme court cautioned that a single conviction for driving while intoxicated, under different circumstances, could support dismissal of a tenured teacher. *Turk*, 640 S.W.2d at 221.

Code Ann. § 49-5-501(3) (2020). This non-exclusive list is a "good starting point" for determining whether a charge of unprofessional conduct has been proven. *Taylor v. Clarksville Montgomery Cty. Sch. Sys.*, No. M2009-02116-COA-R3-CV, 2010 WL 3245281, at *8 (Tenn. Ct. App. Aug. 17, 2010).

Teachers must "adhere to the highest ethical standards." Tenn. Code Ann. § 49-5-1002(1) (2020). Teachers accept this heavy responsibility out of a "desire for the respect and confidence of . . . colleagues, . . . students, . . . parents[,] and . . . members of the community." *Id.* § 49-5-1002(2). At all times, they are expected to "[c]onduct themselves in a manner that preserves the dignity and integrity of the education profession." *Id.* § 49-5-1004(c)(2) (2020). "[F]alse or malicious statements about a colleague" are expressly prohibited. *Id.* § 49-5-1004(b)(7).

The court found that Mr. Hubbard's repeated threats to and about a co-worker constituted unprofessional conduct. The evidence does not preponderate against this finding. Mr. Hubbard's conduct did not reflect the high ethical standards of the education profession. He admitted that threatening another teacher was unprofessional and that his behavior was inappropriate. Yet he maintains that his text messages fell short of being actual threats. We disagree. Mr. Hubbard sent multiple messages to Coach Smith about the rumored affair. At least twice, he threatened to "settle the matter" with a physical beating. As he told his wife, he knew where Coach Smith lived and worked. While Mr. Hubbard may view his messages as empty threats, Coach Smith clearly did not. He was visibly shaken by the news that Mr. Hubbard was on his way to the gym. Mr. Hubbard's "emotional outbursts" set in motion a chain of events that had a decidedly negative impact on the Claiborne County school system.

2. Insubordination

The trial court also found that Mr. Hubbard was guilty of insubordination. Insubordinate conduct typically involves "a defiance of authority." *Morris v. Clarksville-Montgomery Cty. Consol. Bd. of Educ.*, 867 S.W.2d 324, 327 (Tenn. Ct. App. 1993). A teacher who refuses or fails "to carry out specific assignments made by . . . the director of schools . . . when the . . . assignment[] [is] reasonable and not discriminatory" may be insubordinate. Tenn. Code Ann. § 49-5-501(7)(A). To warrant dismissal of a tenured teacher on this basis, the teacher must have refused or failed "to obey some order which a superior . . . is entitled to give and have obeyed." *Morris*, 867 S.W.2d at 327.

The trial court found that the Director ordered Mr. Hubbard to avoid future issues. Mr. Hubbard concedes that the Director gave him an order, but argues that the order was much narrower. The evidence on this point was conflicting. The court credited the testimony of the Board's witnesses. We find no basis in this record to set aside the court's finding.

8

Mr. Hubbard then argues that the Director's order lacked the specificity necessary to meet the statutory definition of insubordination. *See* Tenn. Code Ann. § 49-5-501(7)(A); *cf. Morris*, 867 S.W.2d at 328 (concluding that the insubordination charge had not been proven because the "words used by the witnesses d[id] not amount to an order"). The Director's order, when considered in context, was not overly broad. In April, Mr. Hubbard pled guilty to driving under the influence. He knew that his unprofessional conduct had placed his continued employment as a tenured teacher in jeopardy. Because of his exemplary record as an educator, the Director chose a lesser sanction. But this leniency came with an explicit warning against further instances of unprofessional conduct. The Director did not mandate perfection on Mr. Hubbard's part. All teachers make mistakes. Rather, he gave Mr. Hubbard specific instructions to avoid the type of egregious behavior that could lead to his dismissal.

Mr. Hubbard knew he had received a directive. He also knew that threatening a co-worker was unprofessional. Yet, only a few short months after the Director's order, he sent threatening messages to a co-worker. His decision to engage in unprofessional conduct despite the Director's order was insubordinate.

C.

Proof of a statutory ground for dismissal does not end the matter. The question of the appropriate punishment remains. *See Finney*, 576 S.W.3d at 690. "Whether dismissal is warranted . . . must be determined on a case by case basis after a careful review of attendant circumstances." *Ripley v. Anderson Cty. Bd. of Educ.*, 293 S.W.3d 154, 157 (Tenn. Ct. App. 2008).

Mr. Hubbard complains that neither the hearing officer nor the Board independently determined whether dismissal was appropriate. And this failure, in his view, "rendered the entire hearing process arbitrary and in violation of his statutory rights."

The hearing officer concluded that dismissal was appropriate on these facts. Mr. Hubbard maintains that the hearing officer afforded undue deference to the Board's initial approval of the charges. Based solely on the notice of charges, the Board determined that the specified conduct, if proven, warranted Mr. Hubbard's dismissal. *See* Tenn. Code Ann. § 49-5-511(a)(5). After the hearing, the officer found that the charges had been proven. *See id.* § 49-5-512(a). But he expressed reluctance to set aside the Board's "judgment" without "clear evidence" that the Board "acted arbitrarily or unreasonably." *See Childs v. Roane Cty. Bd. of Educ.*, 929 S.W.2d 364, 365 (Tenn. Ct. App. 1996) ("It is presumed that actions of a board are not arbitrary and capricious, but are reasonable unless there is clear evidence to the contrary."). The Board's initial decision, made without the benefit of a full and complete hearing, was not entitled to deference. The hearing officer had a statutory obligation to "decide what disposition to make of the case." *Id.* § 49-5-512(a)(9).

Even if the hearing officer's analysis was flawed, this error was harmless. *See* Tenn. R. App. P. 36(b). The Board revisited this issue at Mr. Hubbard's appeal hearing. After reviewing the record and hearing argument from counsel for both parties, the Board rejected a motion to reduce the penalty to a one-year suspension. Instead, the Board approved the hearing officer's decision, including his conclusion that dismissal was appropriate.

D.

Mr. Hubbard also argues that the Board violated his statutory rights by voting to uphold the hearing officer's decision without first sustaining the charges. The relevant part of the Tenure Act provides,

> The board shall hear the appeal on the record and no new evidence shall be introduced. The affected employee may appear in person or by counsel and argue why the decision should be modified or reversed. The board may sustain the decision, send the record back if additional evidence is necessary, revise the penalty or reverse the decision. **Before any findings and decision are sustained or punishment inflicted, a majority of the membership of the board shall concur in sustaining the charges and decision.**

Tenn. Code Ann. § 49-5-512(c)(3) (emphasis added).

While separate votes may be ideal, nothing in the cited statute precludes a single vote sustaining both the charges and the decision. And, absent a contrary indication, we conclude that the Board's vote fulfilled the statutory requirement.

Mr. Hubbard maintains that deposition testimony from the individual members of the Board demonstrates a lack of consensus on the charges. We disagree. The Board's consensus is evidenced by the official vote of its members. The Board, as a public body, acts through its official minutes. *See* Tenn. Code Ann. § 8-44-104 (2016). The Board members posed questions to counsel for both parties about the evidence at the hearing and the hearing officer's decision. Having considered the evidence, a majority of the membership of the Board then voted to uphold the hearing officer's decision.

Yet Mr. Hubbard argues that our previous decision in *Winkler v. Tipton County Board of Education*, 63 S.W.3d 376 (Tenn. Ct. App. 2001), supports his position. We cannot agree. In *Winkler*, we considered whether the Board of Education had properly notified a teacher of its "findings and decision" after an evidentiary hearing on two charges of unprofessional conduct. *Id.* at 377, 381; *see* Tenn. Code Ann. § 49-5-512 (1996). At that time, the Tenure Act contained no right to a hearing before an impartial hearing officer. Tenn. Code Ann. § 49-5-512 (1996). Rather, the Board decided the case and notified the

10

teacher of its findings and decision after a full evidentiary hearing. *Id.* In *Winkler*, the Board notified the teacher that it "has determined that [her] actions . . . were improper." *Id.* at 380. But it revised her dismissal to a one-year suspension. *Id.* The trial court upheld the Board's decision. *Id.* at 381. The sparse written findings left us unable to determine whether the Board found the teacher guilty of unprofessional conduct. *Id.* at 382. During deliberations, some Board members expressed the opinion that the teacher was only guilty of poor judgment. *Id.* These comments, coupled with the Board's vaguely-worded letter to the teacher, did not satisfy the Board's statutory obligation to "make known its 'findings and decision.'" *Id.* (quoting Tenn. Code Ann. § 49-5-512(a)(9) (1996)).

Here, we have no doubt as to the Board's findings and decision. The Board publicly upheld the hearing officer's decision. The hearing officer made extensive findings of fact and conclusions of law. He specifically found Mr. Hubbard guilty of both unprofessional conduct and insubordination based on his threatening messages. Mr. Hubbard has not shown that the Board acted arbitrarily and capriciously or in violation of his constitutional or statutory rights. *See Crosby*, 320 S.W.3d at 817.

### III.

Mr. Hubbard was adequately apprised of the charges and evidence against him. There is sufficient evidence to support the trial court's findings of unprofessional conduct and insubordination. And Mr. Hubbard failed to show that the Board's decision was arbitrary and capricious or in violation of his statutory or constitutional rights. So we affirm.

        s/ W. Neal McBrayer
        W. NEAL MCBRAYER, JUDGE